UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

KAILEE GALANTE,
*on behalf of herself and all other employees similarly
situated*,

                                          Plaintiff,                    Case No.:  23-CV-06227 (FPG)

                    -against-

WATERMARK SERVICES IV, LLC,

                                          Defendant.

---------------------------------------------------------------X


# <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT</u>

JACKSON LEWIS P.C.
Noel P. Tripp, Esq.
Brian J. Shenker, Esq.
58 South Service Rd., Ste. 250
Melville, New York 11747
Tel: (631) 247-0404
noel.tripp@jacksonlewis.com
brian.shenker@jacksonlewis.com
*Attorneys for Defendant*

**TABLE OF CONTENTS**

**PAGE(S)**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 3

LEGAL ARGUMENT ........................................................................................... 4

I.    LEGAL STANDARDS APPLICABLE TO MOTION. ....................................................4

II.    PLAINTIFF FAILS TO STATE A CLAIM OF RETALIATION UNDER EITHER
THE FLSA OR NYLL................................................................................... 6

    A.   Plaintiff Fails to Plead Protected Activity Under the FLSA ............................................ 6

    B.   Even If the Initial Complaint Constituted Protected Activity Under the FLSA
(Which It Did Not), the Complaint Pleads No Causal Connection Supporting
Any Theory of Retaliation. ............................................................................ 7

III.  PLAINTIFF FAILS TO PLEAD (AND CANNOT OTHERWISE MEET) THE
DIVERSITY STATUTE'S AMOUNT IN CONTROVERSY REQUIREMENT,
AND THUS THERE IS NO BASIS FOR JURISDICTION IN THIS FEDERAL
COURT OVER PLAINTIFF'S INDIVIDUAL OR CLASS CLAIMS............................. 9

IV.  FOR REASONS NOT FULLY DEVELOPED IN *FREELAND* (INCLUDING THE
SECOND DEPARTMENT'S DECISION IN *GUTIERREZ*), THIS COURT
SHOULD FIND THAT THERE IS NO PRIVATE RIGHT OF ACTION
(EXPRESS OR IMPLIED) IN NYLL §191'S 130+ YEAR HISTORY ......................... 12

    A.   The Text Of NYLL §191 Does Not Provide For A Private Right Of Action For
Errors Relating To The Frequency In Which Payroll Is Processed ............................. 16

    B.   The Text Of NYLL §198 Similarly Does Not Provide For A Private Right Of
Action For Errors Relating To The Frequency In Which Payroll Is Processed ........... 17

    C.   NYSDOL Enforcement of NYLL § 191 Confirms That Pay Frequency Violations
Are Not "Wage Claims" ............................................................................. 19

    D.   The Statutory And Legislative History Further Confirm That NYLL 191
"Pertains to Frequency of Pay and Not Unpaid Wages" As Stated in *Gutierrez* ........ 21

    E.   Legislative History Also Confirms That NYLL 198 Addresses Only Unpaid
Wages (Not Pay Frequency) .......................................................................... 25

    F.   The "No Wage Theft Loophole Act" Further Clarifies That NYLL §198 And §193
Provide The Substantive Right To Collect Unpaid Wages, Not §191, Further
Establishing §191 Provides No Private Right Of Action For Frequency Errors .......... 29

    G.   There Is No Implied Private Right of Action Under NYLL § 191 .............................. 30

V.   TO THE EXTENT THE COURT CONTINUES TO BELIEVE *VEGA* SHOULD BE
FOLLOWED, THE COURT SHOULD STAY FURTHER PROCEEDINGS
PENDING THE SECOND DEPARTMENT'S DECISION IN *GRANT*. ........................ 32

VI.   THE COURT SHOULD DISMISS PLAINTIFF'S CLASS ACTION CLAIMS WITH
      RESPECT TO PUTATIVE CLASS MEMBERS WHO ARE PARTIES TO AN
      AGREEMENT TO ARBITRATE CLAIMS INDIVIDUALLY ......................................34

CONCLUSION ........................................................................................................................ 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006)......................................................................6

*Aflalo v. Cantor Fitzgerald, L.P.*,
298 F. Supp. 3d 688 (S.D.N.Y. 2018)........................................................6

*Altamura v. Reliance Commc'ns, LLC*,
2023 U.S. Dist. LEXIS 33287 (E.D.N.Y. Feb. 28, 2023)............................7

*In re Am. Express Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)......................................................................35

*Arbaugh v. Y & H Corp.*,
546 U.S. 500, 126 S. Ct. 1235 (2006).......................................................4

*Arciello v. Cnty. Of Nassau*,
No. 2:16-cv-3974 (ADS)(SIL), 2019 U.S. Dist. LEXIS 161167 (E.D.N.Y.
Sept. 20, 2019) .........................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).........................5

*Belizaire v. RAV Investigative and Sec. Servs. Ltd.*,
61 F. Supp. 3d 336 (S.D.N.Y. 2014).........................................................12

*Bigger v. Facebook, Inc.*,
947 F.3d 1043 (7th Cir. 2020) ..................................................................35

*Birch v. Pioneer Credit Recovery, Inc.*,
2007 U.S. Dist. LEXIS 41834 (W.D.N.Y. June 8, 2007)..........................10

*Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*,
No. 16-CV-541 (ARR)(JO), 2017 U.S. Dist. LEXIS 75286 (E.D.N.Y. May 17,
2017) ..................................................................................................14, 15

*Boumaiz v. Charter Commc'ns LLC*,
No. 19-cv-06997, 2021 U.S. Dist. LEXIS 102608 (C.D. Cal. May 19, 2021) .......................36

*Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004).......................................................................5

*Caccavale v. Hewlett-Packard Company, et al.*,
No. 20-CV-00974 (GRB)(ST) (E.D.N.Y. Feb 2, 2021) .............................16

*Chan v. Big Geyser, Inc.*,
No. 17-CV-06473 (ALC), 2018 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 30, 2018) .................................................................................................................28

*City of Buffalo v. Smith & Wesson Brands, Inc.*,
No. 23-CV-66-FPG, 2023 U.S. Dist. LEXIS 100113 (W.D.N.Y. June 8, 2023) .............32, 33

*Clark Cnty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001) ...................................................................................................8

*Coley v. Vannguard Urban Improvement Assn.*,
No. 12-CV-5565 (PKC) (RER), 2018 U.S. Dist. LEXIS 54609 (E.D.N.Y. Mar. 29, 2018) ...................................................................................................12, 13

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*,
790 F.3d 411 (2d Cir. 2015) .......................................................................................4

*Cruz v. TD Bank, N.A.*,
22 N.Y.3d 61 (2013) .............................................................................................31, 32

*De Los Santos v. Hat Trick Pizza, Inc.*,
No. 16 Civ. 6274 (AJN), 2018 U.S. Dist. LEXIS 51393 (S.D.N.Y. Mar. 27, 2018) .......................................................................................................................28

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ...............................................................................................34

*Errickson v. Paychex, Inc.*,
447 F. Supp. 3d 14 (W.D.N.Y. 2020) ........................................................................35

*Farmer v. Fzoad*,
2020 U.S. Dist. LEXIS 140935 (SDNY Aug. 5, 2020) ..............................................6

*Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*,
No. 22-CV-6415-FPG, 2023 U.S. Dist. LEXIS 118989 (W.D.N.Y. July 11, 2023) ............................................................................................................. *passim*

*Gardner v. D&D Elec. Constr. Co., Inc.*,
No. 160249/2018, 2019 N.Y. Misc. LEXIS 4448 (Sup. Ct. N.Y. Cty. Aug. 7, 2019) .......................................................................................................................12

*Georgiou v. Harmon Stores, Inc.*,
No. 22-cv-02861 (BMC), 2022 U.S. Dist. LEXIS 234643 (E.D.N.Y. Dec. 29, 2022) ............................................................................................................. *passim*

*Gillespie v St. Regis Residence Club, NY Inc.*,
461 F. Supp. 3d 96 (S.D.N.Y. 2020) .........................................................................13

iv

*Gottlieb v. Kenneth D. Laub & Co.*,
  82 N.Y.2d 457 (1993) ...........................................................................................29

*Grant v. Global Aircraft Dispatch, Inc.*,
  No. 720074/2019, 2021 N.Y. Misc. LEXIS 11125 (Sup. Ct. Qns. Cty. Apr. 20,
  2021) .............................................................................................................. *passim*

*Gutierrez v. Bactolac Pharm., Inc.*,
  210 A.D.3d 746 (2d Dep't Nov. 9, 2022) .................................................... *passim*

*Haar v. Nationwide Mut. Fire Ins. Co.*,
  918 F.3d 231 (2d Cir 2019)...................................................................................13

*Hahn v. Rocky Mountain Express Corp.*,
  No. 11 Civ. 8512 (LTS) (GWG), 2012 U.S. Dist. LEXIS 100466 (S.D.N.Y.
  July 12, 2020)........................................................................................................11

*Hoover v. HSBC Mortg. Corp. USA*,
  No. 3:13-cv-149, 2014 U.S. Dist. LEXIS 204084 (N.D.N.Y. July 9, 2014) ..........33

*Hussain v. Pak. Int'l Airlines Corp.*,
  No. 11-cv-932 (ERK)(VVP), 2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct.
  23, 2012) ..............................................................................................................12

*IKEA U.S. v. Indus. Bd. of Appeals*,
  241 A.D.2d 454 (2d Dep't 1997) ..........................................................................20

*Jensen v. Cablevision Sys. Corp.*,
  372 F. Supp. 3d 95 (E.D.N.Y 2019) ......................................................................36

*In re JPMorgan Chase & Co.*,
  916 F.3d 494 (5th Cir. 2019) ................................................................................35

*Kloppel v. HomeDeliveryLink, Inc.*,
  2019 U.S. Dist. LEXIS 199891 (W.D.N.Y. Nov. 18, 2019) ..................5, 28, 30, 31

*Kone v. Joy Constr. Corp.*,
  No. 15CV1328 (LTS), 2016 U.S. Dist. LEXIS 26981 (S.D.N.Y. Mar. 3, 2016)...................28

*Krumholz v. Vill. of Northport*,
  873 F. Supp. 2d 481 (E.D.N.Y. 2012) ...................................................................11

*Kuo v. Hao Noodle & Tea, LLC*,
  2017 U.S. Dist. LEXIS 144313 (S.D.N.Y. Sep. 5, 2017).......................................11

*Landis v. North American Co.*,
  299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936)................................................32

*Lanqing Lin v. Everyday Beauty Amore, Inc.*,
No. 18-cv-729 (BMC), 2018 U.S. Dist. LEXIS 207988 (E.D.N.Y. Dec. 9,
2018) ................................................................................................................................35

*Lupo v. Human Affairs Int'l*,
28 F.3d 269 (2d Cir. 1994)........................................................................................................9

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
211 F.3d 697 (2d Cir. 2000)......................................................................................................4

*National Shooting Sports Foundation, Inc. v. James*,
No. 22-1374 ..............................................................................................................................32

*Nicholson v. Alliance Nursing Staffing*,
No. 0032222/2018E, 2019 N.Y. Misc. LEXIS 22473 (Sup. Ct. Bronx Cty.
Apr. 30, 2019) ..........................................................................................................................12

*People v. City of Buffalo*,
11 N.Y.S. 314 (5th Dep't 1890).............................................................................................22

*People v. Finley*,
10 N.Y. 3d 647 (2008) ............................................................................................................17

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017).....................................................................................................9

*Quintanilla v. Kabo Pharms., Inc.*,
Case No. 19-06752...................................................................................................................13

*Reed v. Fortive Corp.*,
No. 21-CV-6312 CJS, 2023 U.S. Dist. LEXIS 118954, (W.D.N.Y. July 11, 2023)………...8

*Reddington v. Staten Island Univ. Hosp.*,
511 F.3d 126 (2d Cir. 2007)....................................................................................................13

*Rodriguez, v. Williams-Sonoma, Inc.*,
Civil Action No.: 22-cv-02436-GRB-JMW (E.D.N.Y.).........................................................34

*Ryan v. Kellogg Partners Ins. Servs.*,
19 N.Y. 3d 1 (2012) ................................................................................................................29

*Salama v. Blink Holdings Inc.*,
Index No. 608514/2018 (Sup. Ct. Suffolk Cty. May 15, 2020)................................................1

*Serebryakov v. Golden Touch Transp. of NY, Inc.*,
No. 12-CV-3990 (NGG) (RER), 2015 WL 135947 (E.D.N.Y. Mar. 24, 2015) .....................35

*Sharma v. Airport Mgmt. Servs., LLC*,
2018 U.S. Dist. LEXIS 48593 (S.D.N.Y. March 22, 2018) ...............................................6, 14

*Sheehy v Big Flats Cmty Day*,
73 N.Y.2d 629 (1989) ...............................................................................................30, 31, 32

*Smith v. Town of Patterson*,
No. 22-cv-313 (NSR), 2023 U.S. Dist. LEXIS 8023 (S.D.N.Y. Jan. 17, 2023)......................6

*Spano v. V & J Nat'l Enters., LLC*,
264 F. Supp. 3d 440 (W.D.N.Y. 2017)(Wolford,J) .............................................................33

*Sperry v. Crompton Corp.*,
8 N.Y.3d 204, 831 N.Y.S.2d 760 (2007) ...............................................................................1

*Thompson v. Urban Recovery House, LLC*,
No. 20-CV-9581 (PGG) (JLC), 2022 U.S. Dist. LEXIS 34220 (S.D.N.Y. Feb.
28, 2022) ..............................................................................................................................11

*Trainor v. HEI Hospitality, LLC*,
699 F.3d 19 (1st Cir. 2012)....................................................................................................8

*Ulmer v. StreetTeam Software, LLC*,
No. 22-cv-5662(DLI)(CLP), 2023 U.S. Dist. LEXIS 33435 (E.D.N.Y. Feb.
28, 2023) ....................................................................................................................5, 9, 10

*United Mine Workers v. Gibbs*,
383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)..........................................................5

*People ex rel. Van Valkenburg v. Myers*,
11 N.Y.S. 217 (Sup. Ct., N.Y. Cty. 1890) (referring to L. 1890, ch. 388 as the
"Weekly Payment Law") .......................................................................................................22

*Vega v. CM & Assoc. Constr. Mgt., LLC*,
175 A.D.3d 1144 (1st Dep't 2019) ............................................................................ *passim*

*Wood v. Maguire Auto. LLC*,
2011 U.S. Dist. LEXIS 109293 (N.D.N.Y. Sept. 26, 2011) *aff'd*, 508 F. App'x
65 (2d Cir. 2013)....................................................................................................................9

*Zivkovic v. Laura Christy, LLC*,
No. 17-cv-553 (GHW), 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26,
2022) ....................................................................................................................................14

*Zona v. Arnot Health, Inc.*,
No. 6:20-CV-6902-FPG, 2022 U.S. Dist. LEXIS 69982 (W.D.N.Y. Apr. 15,
2022) ......................................................................................................................................4

**Statutes**

Fed. R. Civ. P. 12 ................................................................................................. *passim*

28 U.S.C. § 1332(a) ...............................................................................................4, 5

28 U.S.C. § 1367(a) ..................................................................................................5

Fair Labor Standards Act ..................................................................................... *passim*

New York Labor Law §191 ................................................................................. *passim*

New York Labor Law § 198 ................................................................................ *passim*

Defendant Watermark Services IV, LLC ("Watermark or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Class Action Complaint (the "Amended Complaint" or "AC") of Plaintiff Kailee Galante ("Galante" or "Plaintiff"), for lack of subject matter jurisdiction pursuant to Rules 12(b)(1), (b)(6), (f) and/or 23 of the Federal Rules of Civil Procedure.[1] Alternatively, Defendant requests that the Court dismiss Plaintiff's putative class claims and decline to exercise supplemental jurisdiction over same, and/or stay this proceeding pending decision from the Appellate Division, Second Department in *Grant v. Global Dispatch* on an issue central to the instant motion.

## PRELIMINARY STATEMENT

On April 27, 2023, the Plaintiff initially filed a Complaint containing a single cause of action alleging only that Watermark violated New York Labor Law (the "NYLL") §191 by paying her, and other alleged "manual workers," on a bi-weekly, rather than weekly basis. Plaintiff did not allege any unpaid wages. Because this alleged payroll processing error resulted in one week of Plaintiff's bi-weekly pay being paid more than seven days after it was due, she claims that she (and the alleged "class" she seeks to represent) is entitled to "liquidated damages" equal to the full amount of the wages paid in each of those "front" weeks of the bi-weekly period.

The initial Complaint relied on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, as the sole basis for federal subject matter jurisdiction (Dkt. No. 2).[2] When Watermark asserted

---

[1] True and correct copies of exhibits ("Ex. [_]") submitted in support of and properly considered in connection with Defendants' Motion are annexed to the Declaration of Brian J. Shenker, Esq. dated July 28, 2023 ("Shenker Decl.") and submitted herewith.

[2] Plaintiff presumably seeks federal jurisdiction over her NYLL claim – a pure state law issue – to avoid the application of CPLR §901(b) which prohibits bringing class actions seeking the very penalties Plaintiff seeks here. *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 211, 831 N.Y.S.2d 760, 763 (2007); *Salama v. Blink Holdings Inc.*, Index No. 608514/2018 (Sup. Ct. Suffolk Cty. May 15, 2020) (liquidated damages under the NYLL are not available in class actions pursuant to CPLR § 901(b) under NY law because they are penalties).

that it intended to seek dismissal of the initial Complaint because – among other things – this Court lacked subject matter jurisdiction pursuant to CAFA, Plaintiff promptly filed the Amended Complaint (Dkt. No 12).

In this second bite at the apple, the Amended Complaint asserts that the Plaintiff was terminated in retaliation for filing this action purportedly in violation of the Fair Labor Standards Act ("FLSA"), alleging she was terminated two weeks after the filing of the original Complaint, though admitting that Watermark's discipline of her was related to bona fide workplace issues and failing to connect this unrelated discipline to the instant action. Plaintiff now seeks to avail herself of this Court's jurisdiction based either on a federal question or diversity jurisdiction, and asserts that this Court "has supplemental jurisdiction over Plaintiff's claims under the NYLL[.]" AC ¶¶ 10, 11. Plaintiff's maneuvering to maintain her claims within the jurisdiction of this Court fails (in whole or in part) for the following reasons:

1. Plaintiff fails to establish federal subject matter jurisdiction through either the FLSA (because she has not stated a retaliation claim) or diversity (because she has not properly pled the amount in controversy as to any or all claims).

2. Alternatively, the court should not exercise supplemental jurisdiction over any putative class based on either theory of federal subject matter jurisdiction.

3. Should the Court reach the merits of Plaintiff's NYLL §191 claim (which it need not do), they should be dismissed because NYLL §191 does *not* provide for a private right of action for pay frequency violations, for reasons not fully developed in argument before this Court in *Freeland*.[3]

---

[3] To the extent necessary for disposition of this motion (and Defendant submits that this issue need not be reached), the Court can stay this action pending the Second Department's decision in *Grant* and any related proceedings in *Grant* flowing from that decision. A stay pending determination in *Grant* before any further proceedings regarding

4.     Lastly, the Court must strike from any putative class any employee subject to Defendant's dispute resolution program, as modified through time, which requires individual arbitration of disputes such as this, and waives the right to participate in a representative action.

## FACTUAL BACKGROUND

Plaintiff began working for Defendant on or about July 17, 2019 at Watermark's Legacy at Park Crescent retirement community, located in Greece, New York. *See* AC, ¶¶ 15-16.  At that time (and throughout the limitations period), Defendant maintained a dispute resolution agreement applicable to its retirement communities in New York, requiring employees to agree to resolve disputes on an individual (non-class) basis.[4]  *See* Declaration of Michael Burkhart submitted herewith and exhibits thereto (the "Arbitration Agreements").

Plaintiff does not allege that she, or anyone else in the class she seeks to represent, is owed any wages.  Rather, Plaintiff claims that Defendant violated NYLL § 191 by paying her and other "manual workers" on a bi-weekly, rather than weekly, basis (AC ¶ 4), and that because of this payroll processing practice, she and the "manual worker" class are "entitled to recover liquidated damages equal to the full amount of their wages paid later than [weekly]…within the six years prior to the filing of [the] Complaint." *Id*. at ¶ 57. Plaintiff asserts that she is a manual worker under the frequency of pay law because, as a Housekeeper and Maintenance Associate, she

---

NYLL 191 will best serve the interests of the parties, the Court, non-parties, and the public because it will provide the Court with critical guidance on this novel, evolving question of New York State law.

[4] While Defendant's program, discussed *infra*, was in place at the time of Plaintiff's hire in 2019 (AC ¶15), at present Defendant is unable to locate a signed agreement to arbitrate in the form discussed herein for Plaintiff, and as such does not seek to compel her claim to arbitration.

performed duties that were physical in nature and spent more than twenty-five percent of her shifts performing such tasks.  *Id*. at ¶¶ 15, 28-29.[5]

On April 27, 2023, Plaintiff initiated this lawsuit by filing the original Complaint. *Id*. at ¶ 33; Dkt. No. 2.   Plaintiff did not serve the Complaint on Watermark's registered agent until May 10, 2022 (Dkt. 4).  On April 29, 2023, Plaintiff reported to work on a day when she was not authorized to work; she was counseled regarding this infraction, which she expressly acknowledges. *Id.* at ¶ 35 and p. 17.  Prior to service of the Complaint, Watermark counseled Plaintiff for multiple additional infractions she committed early in May.  *Id.* at p. 17.  Indeed, Plaintiff's own Complaint ***admits*** that she used Watermark's equipment without permission. *Id*. at ¶ 35.  Plaintiff was terminated on May 10, 2023 in connection with the described conduct and resulting discipline.  *Id*. at ¶ 34 and p. 17.  Defendant was served with the copy of the Summons and Complaint via hand delivery to its registered agent for service, Corporate Creations, and not to Watermark directly, on May 10, 2023.  Dkt. 4.  The Amended Complaint followed on June 28, 2023.  Dkt. 12.

**LEGAL ARGUMENT**

## I.   LEGAL STANDARDS APPLICABLE TO MOTION.

A district court should dismiss an action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when it lacks the statutory or constitutional power to adjudicate it.  *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015); *Zona v. Arnot Health, Inc.*, No. 6:20-CV-6902-FPG, 2022 U.S. Dist. LEXIS 69982, at *5 (W.D.N.Y. Apr. 15, 2022).  Even in the absence of a challenge, Courts "have an independent

---

[5] For purposes of this motion only, Watermark accepts as true the legal conclusion that individuals employed as "maintenance workers" and "housekeepers" constitute "manual workers" under the NYLL. Watermark categorically disputes that this is the case.

obligation to determine whether subject matter jurisdiction exists[.]" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503, 126 S. Ct. 1235, 1238 (2006). Where subject matter jurisdiction is lacking, the action must be dismissed. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) (citations omitted); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Moreover, where federal jurisdiction rests on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), the plaintiff must establish that the amount in controversy exceeds $75,000, exclusive of costs or interest. *See* 28 U.S.C. § 1332(a); *Ulmer v. StreetTeam Software, LLC*, No. 22-cv-5662(DLI)(CLP), 2023 U.S. Dist. LEXIS 33435, at *2 (E.D.N.Y. Feb. 28, 2023) (dismissing action finding that the plaintiff had failed to establish the amount in controversy requirement).

Under Rule 12(b)(6), as Your Honor has held: "a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted" and to survive such motion it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kloppel v. HomeDeliveryLink, Inc.*, 2019 U.S. Dist. LEXIS 199891, at *3-4 (W.D.N.Y. Nov. 18, 2019)(internal quotes omitted)(holding that "a private right of action does not exist under NYLL §198-b"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A federal court has supplemental jurisdiction to hear state law claims pursuant to 28 U.S.C. § 1367(a) as long as those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution." *See* 28 U.S.C. § 1367(a). State law claims are considered part of the same "case or controversy" if they derive from the same "nucleus of operative fact" as the federal claim. *Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). In determining whether two disputes arise from a "common nucleus of operative fact," Courts in this Circuit ask "whether the facts underlying the federal and state claims substantially overlap[] . . . [or] the federal claim necessarily [brings] the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006).

## II. PLAINTIFF FAILS TO STATE A CLAIM OF RETALIATION UNDER EITHER THE FLSA OR NYLL

### A. Plaintiff Fails to Plead Protected Activity Under the FLSA

Here, the Amended Complaint asserts a single federal claim, under the FLSA: that Plaintiff's termination was retaliatory because she was terminated two weeks after the filing of the original Complaint. AC at ¶¶ 37-38. To state a *prima facie* retaliation claim under the FLSA, Plaintiff must allege: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Smith v. Town of Patterson*, No. 22-cv-313 (NSR), 2023 U.S. Dist. LEXIS 8023, at *9 (S.D.N.Y. Jan. 17, 2023) (granting motion to dismiss FLSA retaliation claim where plaintiffs did not allege that they participated in protected activity known to the defendant). In the context of an FLSA retaliation claim, the central question in "determining the existence of protected activity is whether the employee engaged in affirmative conduct that the employer understood as an assertion of the employee's rights *under the FLSA*." *Sharma v. Airport Mgmt. Servs., LLC*, 2018 U.S. Dist. LEXIS 48593, at *14 (S.D.N.Y. March 22, 2018)(emphasis added); *Aflalo v. Cantor Fitzgerald, L.P.*, 298

F. Supp. 3d 688, 695 (S.D.N.Y. 2018) ("[F]or the purpose of a retaliation claim under the FLSA, a plaintiff must still make 'an assertion of rights protected *by the statute*' in order to establish he or she engaged in a protected activity")(emphasis added); *Farmer v. Fzoad*, 2020 U.S. Dist. LEXIS 140935 (SDNY Aug. 5, 2020)(claim of retaliatory action based on complaint regarding inappropriate workplace conduct was "not an FLSA retaliation claim, which is limited filing a complaint or proceeding *under the FLSA*")(emphasis in original).

Here, it is implausible that Plaintiff engaged in protected activity under the FLSA. The original Complaint (the basis of protected activity identified) does not mention the FLSA. Indeed, biweekly payroll frequency does not implicate the FLSA's minimum wage and overtime provisions. *Georgiou v. Harmon Stores, Inc.,* No. 22-cv-02861 (BMC), 2022 U.S. Dist. LEXIS 234643, at *9 (E.D.N.Y. Dec. 29, 2022)(citing U.S. Department of Labor web site summary of the nine states with some form of payroll frequency regulation). "The FLSA pertains solely to the payment of minimum wages and overtime." *Altamura v. Reliance Commc'ns, LLC*, 2023 U.S. Dist. LEXIS 33287, at *9 (E.D.N.Y. Feb. 28, 2023). Thus, the filing of the original complaint cannot serve as the basis of the protected activity, and Plaintiff's theory of FLSA retaliation fails as a matter of law. *Id*. at 12 (complaint about "commissions" did not constitute protected activity under the FLSA).[6]

**B.**  **Even If the Initial Complaint Constituted Protected Activity Under the FLSA (Which It Did Not), the Complaint Pleads No Causal Connection Supporting Any Theory of Retaliation.**

Even if the Amended Complaint articulated a legally-viable FLSA retaliation theory (it does not), Plaintiff's retaliation claims under both the FLSA and NYLL are futile[7] because Plaintiff

---

[6] Defendant does not dispute that the filing of the complaint constituted protected activity under the NYLL, but this claim nevertheless fails as discussed below.

[7] The distinctions in what constitutes protected activity aside, the claims are analyzed similarly. *Id*. at * 18.

fails to factually allege any causal connection, and the documentation submitted by Plaintiff along with her own claims establish that Defendant's disciplinary process pre-dated Watermark's notice of the instant lawsuit such that Plaintiff is unable to prove her termination was casually related to the filing of the original Complaint, and her retaliation claims must be dismissed on this basis as well. Plaintiff filed the original Complaint on April 27, 2023. The disciplinary process culminating in Plaintiff's termination relates to events and discussions starting on April 29, 2023. *See* AC at p. 17 (reflecting disciplinary discussion on April 29, 2023, subsequent performance issues in early May). Plaintiff's own Complaint admits that she committed the two of the infractions identified therein, and further implicitly acknowledges the inappropriateness of one of them (ironically, working off the clock). *Id*. ¶ 35 (admitting to "coming in on her day off"). On May 10, 2023 Plaintiff was terminated. Plaintiff did not effectuate service until that day. Thus, Watermark was not on notice of the original Complaint during the disciplinary process culminating in Plaintiff's termination. Therefore, because Watermark was unaware of the filing of the Complaint at the time of the termination, and the Complaint is otherwise void of any facts plausibly suggesting that Plaintiff engaged protected activity that was known to Defendant and that she was terminated *because of* it, Plaintiff's retaliation claim must fail as a matter of law. *See e.g., Reed v. Fortive Corp.*, No. 21-CV-6312 CJS, 2023 U.S. Dist. LEXIS 118954, at *60 (W.D.N.Y. July 11, 2023) (granting motion to dismiss retaliation claim where a causal nexus could not be inferred as the pleading did not identify the persons "who made the complained-of decisions or explain how such persons would have had notice of Plaintiff's complaint to [defendant].").

Further, "to establish that an adverse employment action was caused by an employee's protected activity, the employer's decision to act adversely to the employee must postdate the protected activity." *Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 27 (1st Cir. 2012). Thus, an

employer need not suspend previously planned personnel decisions upon discovering that an employee has engaged in a protected activity. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). This is exactly the scenario here, as Plaintiff has provided no facts plausibly suggesting that Defendant knew of *any* purported protected activity prior to the disciplinary process in question, which originated in April, nor any facts suggesting that the decisionmakers in connection with Plaintiff's employment were aware of a recently-served lawsuit as they considered the already-documented conduct. Adding to this causal incongruence are the Plaintiff's own admissions that she did, in fact, go to work "on her day off" and that she used Watermark's equipment to launder personal laundry without authorization. AC at ¶ 35.

Because the Amended Complaint fails to allege facts plausibly suggesting that Plaintiff engaged protected activity that was known to Defendant and that she was terminated *because of* it, the Amended Complaint fails to state a retaliation claim as a matter of law.

## III. PLAINTIFF FAILS TO PLEAD (AND CANNOT OTHERWISE MEET) THE DIVERSITY STATUTE'S AMOUNT IN CONTROVERSY REQUIREMENT, AND THUS THERE IS NO BASIS FOR JURISDICTION IN THIS FEDERAL COURT OVER PLAINTIFF'S INDIVIDUAL OR CLASS CLAIMS.

The party invoking a federal court's diversity jurisdiction must "demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied," and courts in this Circuit recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (citation omitted). However, that presumption is only available where "the complaint alleges *facts* plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy." *Wood v. Maguire Auto. LLC*, 2011 U.S. Dist. LEXIS 109293, at *2 (N.D.N.Y. Sept. 26, 2011) *aff'd*, 508 F. App'x 65, 65-66 (2d Cir. 2013) (summary order)

(citing *Iqbal* and affirming that bare and conclusory allegations as to amount in controversy are "not entitled to a presumption of truth.") (emphasis added).

It is well settled that conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient. *See Id.* ("the court need not presume that [a] general allegation that the amount in controversy exceeds the jurisdictional minimum constitutes a good faith representation of the actual amount in controversy."); *Lupo v. Human Affairs Int'l*, 28 F.3d 269, 273 (2d Cir. 1994) (holding that court lacked subject matter jurisdiction where notice of removal failed to "allege facts adequate[ly] establish[ing] that the amount in controversy exceed[ed] the jurisdictional amount"); *Ulmer*, 2023 U.S. Dist. LEXIS 33435, at *3 (E.D.N.Y. Feb. 28, 2023) (same). "Instead, to invoke diversity jurisdiction, a plaintiff must allege facts sufficient to 'plausibly show an amount in controversy of more than $75,000.'" *Id.* at *3-4 (citing *Turban*, 2019 U.S. Dist. LEXIS 128832, at *2 (declining to exercise jurisdiction over claims where "allegations [were] insufficiently detailed to render the jurisdictional amount plausible on its face")).

Here, the Amended Complaint lacks any facts plausibly suggesting that the amount in controversy is met. Much like the allegations at issue in *Ulmer,* the only allegation here is a boilerplate assertion stating that "the amount in controversy exceeds $75,000." AC at ¶10. While the Amended Complaint asserts that Plaintiff's wages were not paid timely, the Amended Complaint fails to provide any facts plausibly suggesting the amount of wages that, in good faith, Plaintiff believes were untimely paid or what damage resulted. Because the Amended Complaint is devoid of any *factual* allegations establishing that the amount in controversy requirement is met, and because the FLSA claim separately fails, the Court lacks subject matter jurisdiction as a matter of law.

"[W]here federal claims can be disposed of pursuant to Rule 12(b)(6), federal courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, 2007 U.S. Dist. LEXIS 41834, at *15 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). This case meets none of the relevant factors weighed to assess whether "exceptional circumstances" exist that might warrant the exercise of such jurisdiction, namely "(1) the length of time the matter has been pending before the federal court [in this case, just three months]; (2) the proximity of the trial date [in this case, a matter of years]; and (3) the predominance of issues of federal, as opposed to local concern [in this case, no federal issues remain upon the dismissal of Plaintiff's FLSA claims]." *Id.* at *16 (citing *McLearn v. Cowen & Co.*, 660 F.2d 845 (2d Cir. 1981)). Even in FLSA cases proceeding to the summary judgment stage, New York federal courts have declined to exercise such jurisdiction where summary judgment disposes of federal claims. *See*, *e.g.*, *Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481, 492 (E.D.N.Y. 2012) ("[T]he Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claim that survives the summary judgment motion…"); *Kuo v. Hao Noodle & Tea, LLC*, 2017 U.S. Dist. LEXIS 144313, at *13 (S.D.N.Y. Sep. 5, 2017) (declining to exercise jurisdiction over NYLL § 191 claim as well as other state law claims upon dismissal of federal retaliation claim under Title VII and the ADA).

Even if the Court were inclined to permit Plaintiff's individual claims to go forward in whole or in part, the supplemental jurisdiction doctrine militates against retaining jurisdiction over the factually-distinct putative class claims. The NYLL §191 claims of the sweepingly-defined absent class (AC ¶¶ 2, 40) are unrelated to Plaintiff's individual FLSA retaliation claim. Plaintiff's FLSA retaliation claim is based upon the alleged relation between Defendant's termination decision and the *filing* of the original Complaint. On the other hand, the NYLL §191 claim solely

relates to the frequency with which Defendant issued payroll to workers in a host of titles distinct from that of Plaintiff, which is in no way relates to the FLSA, Defendant's decision to terminate the Plaintiff, or the original lawsuit filed here. *Hahn v. Rocky Mountain Express Corp.*, No. 11 Civ. 8512 (LTS) (GWG), 2012 U.S. Dist. LEXIS 100466, at *1 (S.D.N.Y. July 12, 2020) (FLSA overtime action provided no supplemental jurisdiction over age discrimination claim when employee's termination was not related to his overtime claim); *Thompson v. Urban Recovery House, LLC*, No. 20-CV-9581 (PGG) (JLC), 2022 U.S. Dist. LEXIS 34220, at *20 (S.D.N.Y. Feb. 28, 2022) (recommending that "state law retaliation and discrimination claims be dismissed because the facts which give rise to these claims do not 'substantially overlap' with the facts that support [plaintiff's] wage claims").

**IV. FOR REASONS NOT FULLY DEVELOPED IN *FREELAND* (INCLUDING THE SECOND DEPARTMENT'S DECISION IN *GUTIERREZ*), THIS COURT SHOULD FIND THAT THERE IS NO PRIVATE RIGHT OF ACTION (EXPRESS OR IMPLIED) IN NYLL §191'S 130+ YEAR HISTORY**

Should the Court reach this question (which it need not do), it should find that the NYLL does not provide a private right of action for payroll processing frequency violations of the New York weekly payment law. *Grant v. Global Aircraft Dispatch, Inc.*, No. 720074/2019, 2021 N.Y. Misc. LEXIS 11125 (Sup. Ct. Qns. Cty. Apr. 20, 2021).[8] Prior to and into 2019, courts almost uniformly confirmed this view. *See, e.g., Hussain v. Pak. Int'l Airlines Corp.*, No. 11-cv-932 (ERK)(VVP), 2012 U.S. Dist. LEXIS 152254, at *8 (E.D.N.Y. Oct. 23, 2012) (dismissing frequency of pay claim because "[t]he NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment"); *Arciello v. Cnty. Of Nassau*, No.

---

[8]    The Second Department heard oral argument in *Grant* on April 21, 2023. (https://wowza.nycourts.gov/vod/wowzaplayer.php?source=ad2&video=OA_2023-04-21_09-59-39.mp4 at 2:04) (last visited July 26, 2023). Defendant anticipates that the Second Department's decision is imminent. As addressed below, as an alternative to disposition of the instant motion now, the Court can stay proceedings pending the outcome of *Grant* and any related developments therein, a procedure utilized by other courts considering NYLL 191 claims, and including judges who have already issued decisions on the right-of-action issue addressed there, as this Court has.

2:16-cv-3974 (ADS)(SIL), 2019 U.S. Dist. LEXIS 161167, at *22 (E.D.N.Y. Sept. 20, 2019) (dismissing NYLL § 191 claim because NYLL § 198 does not provide a remedy for frequency of payment violations). *Gardner v. D&D Elec. Constr. Co., Inc.*, No. 160249/2018, 2019 N.Y. Misc. LEXIS 4448 (Sup. Ct. N.Y. Cty. Aug. 7, 2019) (same); *Nicholson v. Alliance Nursing Staffing*, No. 0032222/2018E, 2019 N.Y. Misc. LEXIS 22473 (Sup. Ct. Bronx Cty. Apr. 30, 2019) (granting motion to dismiss frequency of pay claim under NYLL § 191); *Coley v. Vannguard Urban Improvement Assn.*, No. 12-CV-5565 (PKC) (RER), 2018 U.S. Dist. LEXIS 54609, at *42 (E.D.N.Y. Mar. 29, 2018) (same); *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 360 n.22 (S.D.N.Y. 2014) (report and recommendation adopted 61 F. Supp. 3d 336)(same).

Recently, federal district courts (including this one) have deferred to the First Department's then-outlier decision in *Vega v. CM & Assoc. Constr. Mgt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019).[9] As the *Georgiou* opinion discusses, a federal district court under the *status quo* arguably should proceed this way (by the thinnest of margins), despite the manifest incorrectness of *Vega*, an outlier when it was decided. *Georgiou*, 2022 U.S. Dist. LEXIS 234643 at *14. One such example is this Court's recent decision in *Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*, No. 22-CV-6415-FPG, 2023 U.S. Dist. LEXIS 118989 (W.D.N.Y. July 11, 2023), where Your Honor followed *Vega*, observing that "it would be inappropriate for a federal court to disregard [Appellate Division] cases based solely on the lack of authoritative support for the

---

[9] Federal courts following *Vega* (even before *Konkur*, discussed infra) did so begrudgingly. In *Coley*, decided **before** *Vega*, Judge Chen held that no private right of action exists under NYLL § 191 for a frequency of pay violation. Subsequently, **after** *Vega* was decided, she ruled in another case that she was bound by *Vega*, even though she described the reasoning of Vega as "tortured": "I will say, candidly, I find the reasoning in Vega a little bit – it's going to sound too harsh – a little tortured; but, nonetheless, it is an appellate decision on an issue of New York statutory law interpretation, and . . . I, as well as state courts, are bound to follow appellate court decisions unless I'm convinced – or unless there is substantial evidence or reason to believe that the Court of Appeals would find otherwise." *Quintanilla v. Kabo Pharms., Inc.*, Case No. 19-06752, Tr. p. 1745 (E.D.N.Y. June 30, 2020) (denying motion to dismiss NYLL § 191 frequency of pay claim).

assertions they contain." *Id*. at *22. Defendant does not ask so much. Indeed, "In determining how the Court of Appeals would rule on this legal question, the decisions of New York State's Appellate Division are helpful indicators." *Haar v. Nationwide Mut. Fire Ins. Co.*, 918 F.3d 231, 233 (2d Cir. 2019). But, they are "not authoritative," or binding, but rather "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007); *see Gillespie v St. Regis Residence Club, NY Inc.*, 461 F. Supp. 3d 96, 112, n.10 (S.D.N.Y. 2020).

Such "persuasive data" may include "relevant case law from other jurisdictions on the same or analogous issues, scholarly writings in the field, and any other resources available to the state's highest court." *Michalski*, 225 F.3d at 116. These "other" resources can include "the statutory language, pertinent legislative history, the statutory scheme set in historical context, [and] how the statute can be woven into the state law with the least distortion of the total fabric." *Zivkovic v. Laura Christy, LLC,* No. 17-cv-553 (GHW), 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022). In *Zivkovic*, Judge Woods expressly rejected a First Department decision relating to application of NYLL § 198. In *Ahmed v. Morgan's Hotel Grp., Mgmt., LLC*, the First Department held in a three-paragraph decision (*Vega* was just seven paragraphs) that an affirmative defense set forth in NYLL § 198 that is applicable to violations of NYLL § 195 also applies to minimum wage violations. 160 A.D.3d 555, 556 (1st Dep't 2018). Even though the New York Court of Appeals had not issued any opinions on the issue—the First Department was the only appellate decision, and two federal courts have applied the defense to minimum wage claims—Judge Woods rejected the First Department decision finding the decision was "unreasoned and ran contrary to the clear text of Section 198" and that it was "unpersuasive" because it "failed to engage at all with

the relevant text of the statutes." *Zivkovic*, 2022 U.S. Dist. LEXIS 94839, at *4-8. He also refused to follow two federal court decisions as well, finding neither "evaluate the entire text or the regulatory history" and that therefore the logic underlying their analysis was "not sound." *Id.* at *10; *see also Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-CV-541 (ARR)(JO), 2017 U.S. Dist. LEXIS 75286, at *9 (E.D.N.Y. May 17, 2017) (on reconsideration, refusing to defer to First Department decision on NYLL hours worked issue which ran contrary to NYSDOL guidance).[10]

As it concerns an express right of action, "what the First Department called 'express' in *Konkur* [sic: *Vega*] isn't actually so express. There is no place in the Labor Law stating that an employee who is paid every two weeks instead of one week in violation of § 191 may himself bring suit for the violation." *Id*. at *11. The First Department reached its decision in *Vega* without review, consideration, or discussion of the statutory and legislative histories of the applicable NYLL provisions—§§ 191, 198, and 215—which are discussed below and attached for the Court's consideration.[11] Proper review of these materials ultimately clarifies that no legislative history or intent exists to support the *Vega* court's conclusion.[12]

Defendant requests that the Court analyze how the N.Y. Court of Appeals ("COA") would rule based on the full backdrop of NYLL jurisprudence at issue, including the legislative history (which *Vega* did not do) and relevant Second Department decisions, including notably *Gutierrez*

---

[10] Indeed, Judge Ross' interpretation of the NYLL in *Bonn-Whittingham* (which comported with the NYSDOL's and rejected the First Department's position on the sleep time issue in that case) ultimately was confirmed by the COA, which also rejected the First Department's reasoning in its *Andryeyeva* decision. In other words, multiple federal courts have rejected First Department interpretations of the NYLL in recent years (and, in at least one instance, had that very position vindicated as the COA reversed the First Department).

[11] As also discussed, these provisions have been renumbered and modified numerous times, across more than 100 years. Review of that history is essential to understanding the intent behind them.

[12] By way of example only, contrary to its apparent conclusion that such a right always existed, the First Department relied for support on NYLL § 198's reference to "underpayment," a word added to NYLL § 198 in ***2011***. 2010 N.Y. ALS 564, 2010 N.Y. LAWS 564, 2009 N.Y. S.N. 8380.

*v. Bactolac Pharm., Inc*., 210 A.D.3d 746 (2d Dep't Nov. 9, 2022), where the Second Department reiterated that NYLL § 191 "pertains to frequency of pay and *not unpaid wages*," contrary to *Vega*'s holding that a frequency of pay error under New York Labor Law § 191 *is* a claim for unpaid wages (*i.e*., an "underpayment"). *Id.* (emphasis added).[13] The conclusion that *Vega* within its four corners is dispositive of how the COA would rule is not sustainable in the context of this contradicting jurisprudence.

As the court in *Grant* expressly held, and as Judge Cogan's opinion in *Georgiou* intimates, analysis of the history of Article 6 of the Labor Law leads to the inexorable conclusion that there is no private right of action for being paid every 14 days instead of 7. The "weekly payment" law (which became NYLL § 191) was enacted in 1890. For over 130 years it provided only for *public* enforcement of the law, expressly granting the right to enforce the weekly payment law solely to the New York State Department of Labor ("NYSDOL"). Under the law, the NYSDOL can issue penalties of up to $1,000 for a first violation, up to $2,000 for a second violation, and up to $3,000 for a third violation. It does not provide for the liquidated damages that Plaintiff seeks here.

### A. The Text Of NYLL §191 Does Not Provide For A Private Right Of Action For Errors Relating To The Frequency In Which Payroll Is Processed

NYLL §191, entitled "Frequency of Payments," establishes how often employers must process payroll for various classes of workers. As relevant here, an employer is required to process payroll weekly for a "manual worker."[14] NYLL §191 does not, however, authorize an employee

---

[13] Indeed, Eastern District Judge Brown, after initially following *Vega* in *Caccavale v. Hewlett-Packard Company, et al.,* No. 20-CV-00974 (GRB)(ST) (E.D.N.Y. Feb 2, 2021), subsequently permitted briefing in additional NYLL 191 cases to address these in-depth issues, calling them "interesting" (*see* Dkt. 10 at p.26) and staying cases with such updated briefing pending *Grant*. Ex. 24.

[14] A "manual worker" is defined as a "a mechanic, workingman or laborer." NYLL § 190(4). Again, Defendant denies that Plaintiff or the class she seeks to represent are "manual workers" as defined by the statute. Further, the law permits the Commissioner of Labor to make exceptions upon application for a waiver of the weekly pay requirement. For example, it permits an employer with an average of 1,000 or more employees in New York for three years to pay

to bring a *private* cause of action when an employer selects the wrong frequency of pay (*e.g.*, pays bi-weekly instead of weekly). It does not refer to damages or civil actions, and thus provides no express right. *See Georgiou,* 2022 U.S. Dist. LEXIS 234643, at *9 ("There is no place in the Labor Law stating that an employee who is paid every two weeks instead of one week in violation of § 191 may himself bring suit for the violation.").

### B. The Text Of NYLL §198 Similarly Does Not Provide For A Private Right Of Action For Errors Relating To The Frequency In Which Payroll Is Processed[15]

NYLL § 198 similarly does not provide a private right of action for an error regarding the frequency in which payroll is processed. The analysis begins with the plain meaning of the statute, presuming, in the absence of evidence otherwise, that lawmakers have used words as they are commonly or ordinarily employed. *People v. Finley*, 10 N.Y. 3d 647, 654 (2008). The plain language of NYLL § 198 confirms that payroll processing errors are not "wage claims." NYLL § 198(1-a) provides, in pertinent part:

> In any action instituted in the courts upon a ***wage claim*** by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any ***underpayment***, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its ***underpayment*** of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the ***wages found to be due***, except such liquidated damages may be up to three hundred percent of the total amount of the ***wages found to be due*** for a willful violation of section one hundred ninety-four of this article. (NYLL § 198(1-a))(emphasis added).

---

manual workers semi-monthly. NYLL § 191(1)(a)(ii). There is also an exception for employees of non-profitmaking organizations; they are not required to pay manual workers weekly but can pay semi-monthly as well. *Id.* at § 191(a)(1)(i). Thus, the Labor Law does not make weekly pay sacrosanct; it allows waivers and exceptions.

[15] Plaintiff's Amended Complaint styles Count One as a violation of NYLL § 191 (AC ¶¶ 52-57), and makes only a single passing reference to NYLL § 198 (AC ¶ 3). For avoidance of doubt, Defendant addresses why NYLL § 198 also does not provide the cause Plaintiff seeks – this confusion and ambiguity further illustrates the absence of any legislative intent to create a private right of action through such tortured analysis.

The remaining sections of NYLL § 198 identify other violations that *can* be enforced through private civil actions: Section § 198(1-b), for example, provides an express private right of action for failing to provide employees with a wage notification form upon hire as required by NYLL § 195(1); and Section 198(1-d) provides an express private right of action for failing to provide compliant wage statements (pay stubs) as required by NYLL § 195(3).

Thus, NYLL § 198 establishes a private right of action for: (1) unpaid "wage claim[s]" and (2) certain enumerated, ***non***-wage provisions of the NYLL. Section 191, concerning frequency of pay, however, is not one of these enumerated ***non***-wage provisions that provides a private right of action—there is no reference in the text of NYLL § 198 to NYLL § 191 or to so-called "frequency of pay" violations, which *Gutierrez* reiterates. This, coupled with the COA's observation in *Konkur* that "[w]here the Legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action" is fatal to Plaintiff's claim. *Konkur*, 38 N.Y.3d at 44. *Konkur's* proposition that a private right of action exists only where legislature expressly provides for it is not diminished simply because the *Konkur* court was silent as to "whether the late payment of wages is an underpayment of wages" resulting in a private right of action under NYLL § 198(1-a).

Nor is a frequency claim a "wage claim." By its plain meaning, an error regarding the frequency in which payroll is processed would not be understood to be a "wage claim," or an "underpayment" of wages. For example, it would sound peculiar, for employees who were told they would be paid $1,000 bi-weekly, and thereafter ***received*** $1,000 every two weeks as promised, to complain that their employer underpaid them or that they had a "wage claim" against their employer. They were paid for all the wages they earned on their regularly scheduled payroll date. They do not have a claim for unpaid wages; there are no "wages found to be due." NYLL § 191(1-

a).  Similarly, the term underpayment, as both commonly used and understood, means a payment of an amount that is **less than** what is required by the parties' agreement, not **later** than it was due, and not under a statutory frequency of pay obligation found elsewhere in the law.  If an employer has agreed to pay an employee bi-weekly, and indeed fulfills that obligation and pays an employee for every penny earned on that bi-weekly schedule, there has been no "underpayment."

While this Court stated in *Freeland* that "it would be inappropriate for a federal court to disregard [Appellate Division] cases based solely on the lack of authoritative support for the assertions they contain,"  this Court did not address the Appellate Division's recent decision in *Gutierrez*, where the Second Department held that NYLL § 191 "pertains to frequency of pay and *not unpaid wages*," contrary to *Vega*'s holding that a frequency of pay error under New York Labor Law § 191 *is* a claim for unpaid wages (*i.e.*, an "underpayment"). *Id.* (emphasis added). The conclusion that *Vega is* controlling, as *Freeland* posits, should be reconsidered.

## C.  NYSDOL Enforcement of NYLL § 191 Confirms That Pay Frequency Violations Are Not "Wage Claims"

The absence of a private right of action is confirmed by the structure of the NYLL, including the enforcement mechanisms set forth in NYLL § 218.  When these provisions are read together (which *Vega* did *not* do), the text of the statute shows that technical violations of NYLL § 191 are not "wage claims" subject to liquidated damages, but instead, subject to civil penalties under NYLL § 218.  NYLL § 218 and the NYSDOL classify Labor Law violations in two different categories: (1) wage claims, which are violations for failing to pay "wages, benefits, or wage supplements found to be due"; and (2) non-wage claims, which are violations "for a reason **other than** the employer's **failure to pay wages**."  NYLL § 218 (emphasis added).  For a wage claim, the NYSDOL has no discretion in what remedies are ordered.  It must issue an order for the full amount of "wages, benefits or wage supplements found to be due" and liquidated damages in the

amount of 100% of the unpaid wages. *See* NYLL § 218(1) ("In no case shall the order direct payment of an amount less than the total wages, benefits or wage supplements found by the commissioner to be due, plus the liquidated damages in the amount of one hundred percent of unpaid wages, the appropriate civil penalty").[16] For **non-wage** violations, the Commissioner can issue civil penalties up to $3,000. *Id.* The two remedial schemes are not interchangeable. For wage claims, liquidated damages are required. For non-wage claims, liquidated damages are not available. The NYSDOL brings enforcement actions seeking these administrative penalties—not liquidated damages—hundreds of times each year. These actions are often then reviewed by the Industrial Board of Appeals ("IBA," the NYSDOL's adjudicative branch), which also has ***never*** classified frequency violations as wage claims subject to liquidated damages.[17]

NYSDOL enforcement emphasizes that frequency of pay violations are non-wage claims. The NYSDOL's website classifies violations of wage laws it enforces into four groups: (1) Unpaid Wages, (2) Unpaid Wage Supplements (*e.g.*, vacation), (3) Minimum Wage/Overtime, and (4) ***Non-Wage*** Items. https://dol.ny.gov/unpaidwithheld-wages-and-wage-supplements (last visited June 21, 2023) (emphasis added).[18] Dispositive here, the NYSDOL identifies frequency of pay claims as "non-wage" claims:

> ***Non-Wage Items:***

---

[16] This alone establishes that a frequency claim is not a wage claim—the wages are, by admission, already paid. The legislature did not intend for an employee paid for all hours correctly, but biweekly, to sue their employer every week to re-collect the first week's wages.

[17] The IBA provides an impartial administrative review of the validity or reasonableness of rules, regulations or orders issued by the Commissioner of Labor. *See* https://industrialappeals.ny.gov/about-us (last visited June 26, 2023); NYLL § 100. Employers subject to administrative enforcement for violations receive an Order to Comply. They can appeal such violations to the IBA, request a hearing, and then seek further judicial review in an Article 78 proceeding if they are dissatisfied with the IBA's ruling. NYLL § 102; *see, e.g., IKEA U.S. v. Indus. Bd. of Appeals*, 241 A.D.2d 454, 455 (2d Dep't 1997).

[18] *See* Ex. 1.

Your employer failed to provide the required meal period, day of rest, pay stub, notice of pay, ***timely payment of wages***, or took a negative action against you for making a complaint related to the Labor Law.

*Id.* (emphasis added).[19]  In review of NYSDOL determinations, the IBA has repeatedly confirmed that errors relating to the frequency with which payroll is processed are non-wage claims because the NYSDOL has only sought (and the IBA has only awarded) civil penalties, not liquidated damages, for violations of NYLL § 191's frequency requirements. *See, e.g., Hudson Valley Mall Dental*, PR 12-034, at p. 1 (Indus. Bd. of Appeals Aug. 7, 2014)[20] (awarding a penalty of $100 for violation of weekly pay requirement, not wages paid later than required by NYLL §191).  *See also Century Diner Buffet, Inc.*, PR 12-180 (Indus. Bd. of Appeals, July 13, 2016) (finding one employee was paid all his wages, but because he was paid monthly, instead of weekly, it imposed a penalty of $1,000, and not damages equal to all his "late" wages).[21]

D. **The Statutory And Legislative History Further Confirm That NYLL 191 "Pertains to Frequency of Pay and Not Unpaid Wages" As Stated in *Gutierrez***

The legislative history of both NYLL §§ 191 and 198 further establishes that a violation of NYLL § 191 is not, and has never been, a wage claim.  Section 191, which contains the weekly payment law, dates back to 1890.  Section 198, in contrast, dates back to 1937 when it was called

---

[19] Indeed NYSDOL administrative guidance of all forms is consistent with this position, from its  Complaint Form (NYSDOL's Labor Standards Complaint Form (Mar. 2021 ed.) at Part 8, No. 37(h), available at https://dol.ny.gov/system/files/documents/2023/04/ls223.pdf (last visited July 26, 2023)) to its guidelines for imposing civil penalties under the Labor Law (link)(identifying the "failure to make timely payment of wages" under NYLL § 191 as a Labor Law violation other than the failure to pay wages) to its opinion letters (NYSDOL Op. Ltr., May 8, 2007 (noting violations of NYLL § 191's pay frequency requirement would "be calculated based upon the up to $1,000.00, $2,000.00, or $3,000.00 civil penalties . . . as provided [under] Labor Law §218" and not identifying liquidated damages as a remedy).

[20] Available at https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-12-034.pdf (last visited July 26, 2023).

[21] Available at  https://industrialappeals.ny.gov/system/files/documents/2020/02/pr-12-180.pdf (last visited July 26, 2023).

the "Model Wage Bill," and was enacted to provide a cause of action for unpaid wages. The two laws were different statutes, with different histories, which addressed different concerns. They were and have always been independent of one another. One (the Model Wage Bill) provides a private right of action for claims for unpaid wages. The other (the Weekly Payment Law) regulates frequency of pay and is enforced by NYSDOL through civil and administrative actions and the penal law. The legislature's restructuring of Article 6 through the years in no way changed the weekly payment law.

The weekly pay requirement was first codified as § 6 of the Labor Law (again, in 1890). It was known then as the "Weekly Payment Act," and Section One of the new Act required certain employers to pay employees weekly. L. 1890, ch. 388, § 1;[22] *See People ex rel. Van Valkenburg v. Myers*, 11 N.Y.S. 217, 217 (Sup. Ct., N.Y. Cty. 1890) (referring to L. 1890, ch. 388 as the "Weekly Payment Law"). Section Two of the Weekly Payment Act (then codified as Labor Law § 7), in turn, provided the remedy: a penalty of between $10-$50 to be paid to the people of the State, which was to be recovered in a civil action brought by the "factory inspectors" (predecessor to the NYSDOL) for whom the Attorney General would appear. *Id.* at §§ 2-3. Following its enactment, factory inspectors and the Attorney General (or designees) —not private citizens— brought actions to enforce the law. *See* "The Weekly Payment Law. It is Being Generally Enforced—Transgressors Will Be Punished," N.Y. Times, Aug. 16, 1890; *People v. City of Buffalo*, 11 N.Y.S. 314 (5th Dep't 1890) (action to enforce the weekly payment law).

Between 1890 and 1966 (when the Labor Law was recodified), the Weekly Payment Act was amended several times to expand the scope of its coverage and renumbered, but the remedy

---

[22] Ex. 2.

provision did not change—violations remained subject to civil penalties.[23] In 1966, Article 6 of the Labor Law was repealed, reorganized, and recodified to make the law clearer after multiple amendments during the preceding 75 years. *See* Bill Jacket, Mem. In Support of L. 1966, ch. 548.[24] Significantly, however, the 1966 amendment did not change the Weekly Payment Act as it relates to manual workers employed by for-profit corporations or modify the remedy for a violation (a civil penalty). *See Id.* ("This bill retains the present provisions for manual and railroad workers and for salesmen.").

As a result of the 1966 amendment, the Weekly Payment Act, was once again renumbered (for the third time) as NYLL § 191 (where it resides today). It was also retitled, "Frequency of Payments" (as it no longer only governed *weekly* pay but set forth the frequency of pay for various classes of workers). The civil remedies provision (which began its life as Labor Law §7, then renumbered §11, and at the time immediately preceding the 1966 recodification, renumbered §198), was renumbered again, this time as NYLL § 197, where it also resides today. *See* L. 1966, ch. 548.[25]

Following the 1966 repeal and recodification of the Labor Law, The Weekly Payment Act was amended four more times, for various reasons.[26] But with each amendment, the enforcement

---

[23] *See* L. 1897, ch. 415 (Expanding the law to include more employers. The law was also renumbered in 1897 as Labor Law § 10, and the remedy provision, a civil penalty to be recovered in a civil action brought by the State, was renumbered as Labor Law § 11) (Ex.3); L. 1908, ch. 442 (including railroad workers to coverage) (Ex. 4); L. 1921, ch. 50 (the law was again renumbered, this time as New York Labor Law § 196. And the corresponding civil penalty provision (then Labor Law § 11), was renumbered as NYLL §198) (Ex.5); L. 1935, ch. 619 (expanding scope of coverage) (Ex. 6).

[24] Ex. 7.

[25] Ex. 8.

[26] *See* L. 1987, ch. 404, § 1 (addressing mailing of checks to railroad workers) (Ex. 9); L. 1989, ch. 38, § 1 (allowing certain employers to pay manual workers every two weeks rather than every week if they have over 1,000 workers) (Ex. 10); L. 1993, ch. 168, § 1 (expanding waiver of weekly pay for large employers employing 1,000 workers in-

mechanism and remedy for violations of the Weekly Payment Act (again, itself renumbered NYLL § 197 following the 1966 recodification) remained the same as when it was enacted in 1890. To ensure compliance, the Act authorized the Commissioner of Labor (successor to those "factory inspectors") to file a civil action and seek a civil penalty. *See* L. 2002, ch. 427.[27] It did not authorize private claims.

In the 1980s, the Legislature increased NYSDOL's enforcement options. In 1980, it enacted NYLL § 218, granting NYSDOL the ability to issue civil fines in administrative hearings (rather than filing civil actions in court under NYLL § 197) for unpaid wage claims. *See* Bill Jacket, Budget Rep., L. 1980, ch. 697[28] ("This bill would . . . add a new section, 218 to the Labor Law, creating an administrative adjudication process."). In 1987, the Legislature amended NYLL § 218 to permit NYSDOL to issue penalties of $1,000 to $3,000 for non-wage violations. *See* L. 1987, ch. 417, Bill Jacket, at 5, Mem. of Commissioner of Labor[29] (noting the "purpose of the bill" is to "provide for civil penalties and interest assessments against violators of notice, recordkeeping and other ***non-wage*** requirements set forth in the labor law") (emphasis added). And that is how NYSDOL enforces NYLL § 191 today.

Despite all of these amendments, for over 130 years one thing has remained the same: both the statutory text of NYLL § 191 and its legislative history have never suggested (let alone supported) the claim that employees could bring private rights of action for violations of the Weekly Payment Act (or, as it is now known, NYLL § 191).

---

state, but more than 3,000 employed out-of-state) (Ex. 11); and, L. 2007, ch. 304, § 4 (addressing commissioned salespeople) (Ex. 12.).

[27] Ex. 13.

[28] Ex. 14.

[29] Ex. 15.

**Legislative History Also Confirms That NYLL 198 Addresses Only Unpaid Wages (Not Pay Frequency)**

The legislative history of NYLL § 198 similarly confirms that the Legislature never characterized a violation of the weekly payment law as a wage claim that would trigger a violation of NYLL § 198. Rather, NYLL § 198 always was intended to address ***unpaid*** wages based on the conduct identified in the 1937 law. Enacted in 1937, the Model Wage Bill, which would eventually be renumbered NYLL § 198, was designed to reduce the number of unpaid wage claims clogging up the State's municipal court dockets.[30] It had nothing to do with frequency of pay requirements. Specifically, before its enactment, employees' only recourse for unpaid wages was a private action for common law breach of contract, and the sheer number of these small wage claims had overwhelmed both the municipal courts and the Legal Aid Society (which prosecuted these cases on behalf of New York's indigent employees). *See* L. 1937, ch. 500;[31] Bill Jacket, Ltr. Legal Aid Comm. Ass'n of the Bar (sponsor), at 4-6. [32]

The Bill's primary purpose was to alleviate the burden of these unpaid wage claims by authorizing the Commissioner of Labor to "take assignments of wage claims and to institute suits for enforcement." *Id.* By doing so, the Legislature hoped that employees would "be spared the expense and disheartening procedure of suing on them individually," and that the Legal Aid Society would, "upon being freed from this burden . . . be enabled to devote itself to other work which cannot now be adequately handled." *Id.* at 5.[33] Thus, the Model Wage Bill, codified as

---

[30] When the Labor Law was repealed in 1966 and recodified, §199-b was renumbered again, this time as NYLL § 198, where it is found today. *See* Bill Jacket, L. 1966, ch. 548, p. 10. Accordingly, NYLL § 198 is simply the recodified version of the 1937 Model Wage Bill.

[31] Ex. 16.

[32] Ex. 17.

[33] The Model Wage Law was later renumbered as NYLL § 199-b in 1944. *See* L. 1944, ch. 793.

Labor Law §199 and §199-a, gave the Commissioner of Labor and employees the statutory right to bring a civil action for unpaid wages. L. 1937, ch. 500, § 1 (adding NYLL § 199-a);[34] *see also* "Wage Bill is Held an Economic Need," N.Y. Times, April 11, 1937 (noting that under the new Model Wage Bill, the court can award costs up to $25 in a wage suit by an employee or the Commissioner).

The legislative history makes clear that "wage claims" refers to claims for unpaid or underpaid wages. Critical here, the memoranda in support of the bill explained that "wage claims" arise in three fact scenarios (***none*** of which involve violations of the Weekly Pay Law):

> A. disputes between employers and employees regarding what amount the employer agreed to pay;
>
> B. employers who became insolvent and as a result failed to pay wages; and
>
> C. employers who acted in "bad faith" and simply refused to pay wages.

*See* L. 1937, ch. 500, Bill Jacket, p. 13.[35]

Nothing in the legislative history suggests that the Model Wage Law created a private right of action for a violation of the Weekly Payment Act. First, the two were enacted to address different concerns. The Weekly Payment Act addressed how frequently employers were required to pay employees; the Model Wage Law addressed actions for the failure to pay wages, based on the scenarios identified as constituting genuine withholding of wages.

Second, the legislative history addresses the importance of vesting the Commissioner with ***new*** authority to adjust and prosecute wage claims. The phrase "wage claims" could not be a reference to frequency of pay violations because as the Commissioner already had the authority to

---

[34] *See* Ex. 16. Section 199-a, added by the Model Wage Law, provided: "In any action instituted upon a wage claim by an employee or the commissioner, the court may allow such employee if he prevails, in additional to all ordinary costs, a reasonable sum, not exceeding twenty-five dollars, for expenses which may be taxed as costs."

[35] Ex. 18.

bring such claims—there was no need for new legislation to enforce the Commissioner's existing rights. Had the Legislature intended to revise the remedies available for frequency of pay violations (*i.e.,* by treating late wages as unpaid wages, not as violations subject to a civil penalty), it would have only needed to revise the remedy section of the existing Weekly Payment Act, which it chose not to do so.

Third, the legislative history repeatedly refers to alleviating the existing small wage claims filed by employees pending in the State's courts. These existing claims could not have included technical violations of the Weekly Payment Act, which, until very recently, and mainly post-*Vega*, were never pending in any court. There is no reference in either the law or the legislative history to frequency of pay violations, even though the Weekly Payment Act had been in effect for almost 50 years. If it was intended to create a private right of action, it would have mentioned violations of the Weekly Pay Law. It did not. This alone is dispositive.

Later amendments reinforce that the Legislature intended NYLL § 198 to address claims for ***unpaid*** wages, not frequency of pay claims. In 1997, the Model Wage Law was amended by the "Unpaid Wages Prohibition Act." L. 1997, ch. 605, §2.[36] This amendment made several changes to the Labor Law to "strengthen deterrence and enhance enforcement of employer ***underpayment*** and ***nonpayment*** of employee wages." *See* Bill Jacket, Gov. Mem. In Support., L. 1997, ch. 605, Sep. 17, 1997 (emphasis added) ("1997 Gov. Mem.").[37] It had nothing to do with the weekly payment law or frequency of pay provision. Indeed, there is not a single mention of the weekly payment law or NYLL § 191 in any of the Act's legislative history. L. 1997, ch. 605, § 1. Instead, and as in 1937, the Legislature's stated and singular intent was to address employers who

---

[36] Ex. 19.

[37] Ex. 20.

failed to pay their employees, not employers who paid their employees bi-weekly instead of weekly.

In 2010, the Legislature passed the "Wage Theft Prevention Act," which amended the Model Wage Law to increase liquidated damages for claims seeking unpaid wages from 25% to 100%. *See* L. 2010, ch. 564.[38] It also created a new obligation for employers to provide employees with notice of their wages and compliant wage statements and, significantly, created **new** and express private rights of action for employers who failed to do so. *See* L. 2010, ch. 564. If Section 198(1-a) automatically provides a private right of action for *b* violations of Article Six (and not just for unpaid wage claims), there would have been no reason for the Legislature to create a right of action for the notice provisions in 2010.[39]

More critically, when the Legislature amended NYLL § 198(1-a) in 2010 to allow a prevailing employee on a wage claim to recover "the full amount of any **underpayment**" and liquidated damages "of the wages found to be due," the Sponsor's Memorandum justified the amendment by arguing for the need to penalize employers who do not pay their employees all amounts owed. *See* Bill Jacket, Commissioner of Labor Mem., L. 2010, ch. 564, at 9.[40] Thus, when the Legislature added the word "underpayment" in 2010, it used that word to describe the **failure** to pay wages, or the underpayment of wages, not payroll processing errors under NYLL §

---

[38] Ex. 21.

[39] That NYLL§198 would not regulate the substantive provisions of NYLL 191 is hardly a unique circumstance within the context of the Labor Law; there are many obligations created by the Labor Law that also provide no private right of action. *See De Los Santos v. Hat Trick Pizza, Inc.,* No. 16 Civ. 6274 (AJN), 2018 U.S. Dist. LEXIS 51393 (S.D.N.Y. Mar. 27, 2018) (no private right of action under NYLL § 162, failure to provide a meal period); *Chan v. Big Geyser, Inc.,* No. 17-CV-06473 (ALC), 2018 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 30, 2018) (no private right of action under §§ 195(2) and (4)); *Kone v. Joy Constr. Corp.,* No. 15CV1328 (LTS), 2016 U.S. Dist. LEXIS 26981 (S.D.N.Y. Mar. 3, 2016) (no private right of action under § 195(5)). And of course, per the COA decision in *Konkur* – citing Your Honor's decision in *Kloppel* –there is no private right of action for violations of NYLL §198-b.

[40] Ex. 22.

191. *Vega's* reasoning that NYLL § 198 provided an express right of action hinged entirely on the inclusion of the word "underpay" in NYLL § 198. But that word was added in 2010 simply as part of the amendment increasing liquidated damages available for unpaid wage claims from 25% to 100%. *See* L. 2010 Ch. 564 (Ex. 21). Under *Vega's* logic, it was only in 2010 (when the word "underpayment" was added) that a private right of action for violations of NYLL § 191 suddenly was created. But there is not a single word in the legislative history that supports that conclusion. Not a word is mentioned in the 124 pages of legislative history contained in the Bill Jacket about frequency of pay violations under NYLL § 191. The right of action was—and is—for the failures to pay identified in its 1937 enactment: 1) disputes over amount; 2) insolvency issues; and, 3) outright refusal to pay.

F.    **The "No Wage Theft Loophole Act" Further Clarifies That NYLL §198 And §193 Provide The Substantive Right To Collect Unpaid Wages, Not §191, Further Establishing §191 Provides No Private Right Of Action For Frequency Errors**

The last amendment to NYLL § 198, 2021's "No Wage Theft Loophole Act," L. 2021, c. 397 ("2021 Wage Act"),[41] answered a question that had caused significant confusion in the courts: What section of the NYLL provides a private right of action for wages that genuinely are unpaid (*i.e.,* true underpayments as contemplated by the Model Wage Bill)? Is it NYLL § 191, § 193 (which prohibits "deductions" from wages), or § 198 itself? The 2021 amendment clarifies once and for all that a claim for unpaid wages under the NYLL is cognizable only under NYLL §§ 193 or 198—***not*** § 191.In passing the 2021 Wage Act, the Legislature explicitly addressed, and resolved, a split among the courts regarding the application of the NYLL and confirmed that §§ 193 and 198—***not*** § 191—provide a private right of action for unpaid wage claims. *See* Scott A. Lucas, Labor Law Article 6: A Misunderstood Law that Fully Protects All Employees' Wages, 80

---

[41] Ex. 23.

Alb. L. Rev. 1355, 1358 (2016/2017) (explaining that the 1997 Amendment to the NYLL "superseded the Court of Appeals' 1993 decision in *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457 (1993)"). The Legislature confirmed that NYLL § 193 also provides a right to bring an unpaid wage claim, as the Court of Appeals held in *Ryan v. Kellogg Partners Ins. Servs.*, 19 N.Y. 3d 1, 5 (2012); *see* L. 2021, ch. 397, § 1. The Legislature did not, however, amend NYLL § 191, nor did it mention NYLL § 191 anywhere in its legislative history. This is because § 191 does not provide, and never has provided, the substantive basis for an unpaid wage claim. And NYLL § 191certainly does not provide a private cause of action for a violation of its frequency of pay requirements: it "pertains to frequency of pay and not unpaid wages." *Gutierrez, supra*.

### G.   There Is No Implied Private Right of Action Under NYLL § 191

This Court previously declined to infer that a private cause of action exists under the Labor Law where the legislature did not expressly provide for it. *See Kloppel*, 2019 U.S. Dist. LEXIS 199891, at *7 (W.D.N.Y. Nov. 18, 2019) ("New York courts have routinely declined to recognize a private right of action in instances where, as here, the legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself.") (internal quotation marks omitted). The fact that this Court's analysis in *Kloppel* concerned the application of NYLL § 198-b does not diminish the premise that this Court does not infer a private right of action unless the legislature expressly provides for it. Accepting that an implied private cause of action exists here would conflict with *Konkur* and *Kloppel*, upon which *Konkur* relied for that very proposition. Defendant does not read this Court's decision in *Freeland* as contradicting this conclusion as to an implied right of action.

Where the Legislature has not provided for an express right of action, the New York Court of Appeals applies a three-factor test in determining whether the Court should create an "implied" private right of action: (1) whether the plaintiff is one of the classes for whose particular benefit

the statute was enacted, (2) whether recognition of a private right of action would promote the legislative purpose, and (3) whether creation of such a right would be consistent with the legislative scheme. *Sheehy v Big Flats Cmty Day*, 73 N.Y.2d 629, 633 (1989). While all three factors must be satisfied, the third factor is the "most important" and usually dispositive. *See Konkur*, 38 N.Y.3d at 41; *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013). This third and "most important" factor— whether creating a private right of action would be consistent with the legislative scheme— "typically turns on the Legislature's choice to provide one particular enforcement mechanism to the exclusion of others, because it demonstrates that the Legislature considered and decided what avenues of relief were appropriate." *Konkur*, 38 N.Y.3d at 41 (quoting *Ortiz*, 27 N.Y.3d at 362). "[T]he Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves." *Id.* (quoting *Sheehy*, 73 N.Y.2d at 634-35). Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the overall statutory scheme. Here, consistent with this Court's view in *Kloppel*, the Legislature already provides an express enforcement mechanism for violations of NYLL § 191, in NYLL § 218(1). Judicially creating a private right of action (when the Legislature has chosen not to do so) ignores the choices made by the Legislature and is inconsistent with the statutory scheme.

    *Vega* is not, even arguably, good law after *Konkur* as to an implied right.[42] Applying the *Sheehy* factors, the Court in *Konkur* held that, because the statutory scheme in Article 6 already expressly provides "two robust enforcement mechanisms, indicating that the Legislature

---

[42] Again, Judge Cogan properly independently analyzes this issue: "I have no trouble finding that *Vega's* alternative holding that there is an implied right of action has been abrogated by *Konkur*." *Georgiou*, 2022 U.S. Dist. LEXIS 234643 at *10.

considered how best to effectuate its intent and provided the avenues for relief it deemed warranted," it must "decline to find **another** enforcement mechanism beyond the statute's already comprehensive scheme." 38 N.Y.3d at 43 (internal quotations and citation omitted) (emphasis added). Here, just as in *Konkur* and the earlier decisions on which the Court in *Konkur* relied (*Sheehy*, *Cruz*, and *Ortiz*), the Legislature established a comprehensive enforcement mechanism for violations of the Weekly Payment Law. NYLL § 191does not provide for an express private right of action. It would, therefore, be "anomalous to infer from its silence" that the Legislature intended to create a private right of action where none otherwise exists. *Sheehy*, 73 N.Y.2d at 636.

## V. TO THE EXTENT THE COURT CONTINUES TO BELIEVE *VEGA* SHOULD BE FOLLOWED, THE COURT SHOULD STAY FURTHER PROCEEDINGS PENDING THE SECOND DEPARTMENT'S DECISION IN *GRANT*.

It is well settled that district courts have the power to stay proceedings. *See Landis v. North American Co.*, 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants."). Courts routinely exercise this authority where, as here, an appellate court is considering an important issue of law impacting the litigation. Indeed, this Court recently stayed two related actions pending disposition of an appeal pending in the Second Circuit in *National Shooting Sports Foundation, Inc. v. James*, No. 22-1374, a decision which may have significantly impacted the litigation. *City of Buffalo v. Smith & Wesson Brands, Inc.*, No. 23-CV-66-FPG, 2023 U.S. Dist. LEXIS 100113, at *8 (W.D.N.Y. June 8, 2023).

In that case, the cities of Buffalo and Rochester sought to hold gun manufacturers and distributors liable for their actions in causing gun violations in their communities. But, similar to this case, the statute underlying one of the plaintiffs' claims was at issue in an appeal pending

before the Second Circuit. In deciding whether to issue a stay, this Court considered the following factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant[]; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Id.* at *8 (citing *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).

Similarly, in this case, to the extent the Court views *Vega* as the current authoritative position on NYLL §191 (as in the *Freeland* decision), a stay pending a determination in *Grant* will best serve the interests of the parties, the Court, non-parties, and the public because it will provide the Court with critical clarification on the very statute at issue in this case. Further, a temporary stay will not prejudice the Plaintiff, who only seeks monetary damages. *See City of Buffalo,* 2023 U.S. Dist. LEXIS 100113, at *11 (holding that the plaintiffs were not prejudiced because they only sought monetary relief). Conversely, both parties would be severely prejudiced if they were required to expend the time and resources litigating claims which may be rendered moot should *Grant* distinguish *Vega*. *See Id.* (citing *McCracken v. Verisma Sys. Inc.*, No. 14-CV-6248, 2020 U.S. Dist. LEXIS 199955, at *8 (W.D.N.Y. Oct. 27, 2020) (rejecting plaintiffs' argument that unnamed members of the class would be prejudiced by a delay and finding, instead, that the interests of the class and nonparties would be better served by waiting for "invaluable guidance to the Court" on key issues)).

For the same reasons, the decision to stay this case pending the outcome of the *Grant* decision serves judicial economy, and preserves the court's resources, rather than addressing this key legal issue multiple times seriatim based on the outcome of the *Grant* appeal. *Spano v. V & J Nat'l Enters., LLC*, 264 F. Supp. 3d 440 (W.D.N.Y. 2017)(Wolford,J)(issuing sua sponte stay in

wage action pending anticipated appellate direction regarding class action waivers); *Hoover v. HSBC Mortg. Corp. USA*, No. 3:13-cv-149 (MAD/DEP), 2014 U.S. Dist. LEXIS 204084, at *8 (N.D.N.Y. July 9, 2014) (staying class litigation because "it would be an inefficient use of time and resources of the Court and the parties to proceed in light of a pending Second Circuit decision" that may significantly impact the litigation). At least one other court within New York, confronted with a similar pending motion regarding NYLL § 191 elected to stay proceedings pending *Grant*. *See Rodriguez, v. Williams-Sonoma, Inc.*, Civil Action No.: 22-cv-02436-GRB-JMW (E.D.N.Y.) (docket Order dated April 25, 2023, granting motion to stay pending a ruling from the Second Department in *Grant*).[43] For this reason, Defendant respectfully requests that this Court issue a stay pending a ruling from the Second Department in *Grant*.

## VI. THE COURT SHOULD DISMISS PLAINTIFF'S CLASS ACTION CLAIMS WITH RESPECT TO PUTATIVE CLASS MEMBERS WHO ARE PARTIES TO AN AGREEMENT TO ARBITRATE CLAIMS INDIVIDUALLY

If the Court finds that Plaintiff may proceed with her individual claim (to the extent any claim can lie, which it cannot as discussed herein), and that supplemental jurisdiction is appropriate at this stage, it nevertheless should dismiss Plaintiff's class allegations to the extent Plaintiff's putative class includes individuals who are party to agreements to arbitrate their disputes with Defendant. AC. ¶ 40 (class definition). The Federal Arbitration Act provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In *American Express Co. v. Italian Colors Restaurant,* the Supreme Court emphasized the obligation of the lower courts to "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration

---

[43] *See* Ex. 24.

will be conducted." 133 S.Ct. 2304, 2309 (2013); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) (upholding as lawful arbitration agreements with class and collective action waivers). On a motion to dismiss premised on the existence of an arbitration agreement, the Court must determine only: (i) whether the parties entered into a valid agreement to arbitrate; and (ii) whether the dispute falls within the scope of the arbitration agreement. *See, e.g., In re Am. Express Fin. Advisors Sec. Litig.,* 672 F.3d 113, 128 (2d Cir. 2011). Both of these issues are properly resolved by the Court, rather than the arbitrator, unless the arbitration agreement itself unequivocally designates such authority to an arbitrator. *See, e.g., Serebryakov v. Golden Touch Transp. of NY, Inc.,* No. 12-CV-3990 (NGG) (RER), 2015 WL 135947, at *3 (E.D.N.Y. Mar. 24, 2015).

Here, a significant number of current and former Watermark employees in New York are parties to arbitration agreements with Watermark. *See* Declaration of Michael Burkhart. These agreements are valid on their face. *Id.*

Even under the lower standard for certification applicable to FLSA collective actions, both Courts of Appeals for the Fifth Circuit and Seventh Circuit have found it appropriate to bar notice to members of putative presentative groups who are parties to valid arbitration agreements. *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020). Courts in this District and others agree. *See Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 27-29 (W.D.N.Y. 2020) (finding that the employees who had signed arbitration agreements were not "similarly situated" to named plaintiffs and therefore ordering that notice not be sent to employees who had signed arbitration agreements); *Lanqing Lin v. Everyday Beauty Amore, Inc.*, No. 18-cv-729 (BMC), 2018 U.S. Dist. LEXIS 207988 at *13-14 (E.D.N.Y. Dec. 9, 2018) ("It would waste everyone's time and resources to conditionally certify a group of individuals that the Court is virtually certain to decertify at step two. This is not to mention the

risk of confusion to and subsequent disappointment of the employees who have signed the arbitration agreement . . . The relevant record as to these employees is the arbitration agreement. That record is before the Court now and there is no benefit obtained by waiting until step two to decide this issue. Based on the terms of the agreement, and defendants' attestation that every retail sales employee has signed this provision as a condition of new or continued employment, these FLSA waivers are enforceable . . . Those employees are not similarly situated to the named plaintiffs. Rather, their FLSA and NYLL claims must be arbitrated on an individual basis, and they cannot join this action"); *Boumaiz v. Charter Commc'ns LLC,* No. 19-cv-06997, 2021 U.S. Dist. LEXIS 102608, at *15 (C.D. Cal. May 19, 2021)("named plaintiff who has not signed an arbitration agreement" could not "represent a class that includes persons who have signed arbitration agreements"). Indeed, "[t]he mere potential that the relevant arbitration provision is valid is sufficient to preclude a named plaintiff who opted out of the provision from representing a class largely made up of individuals that may be subject to the agreement." *Jensen v. Cablevision Sys. Corp.,* 372 F. Supp. 3d 95, 123 (E.D.N.Y 2019).

Accordingly, the Court should dismiss Plaintiff's class action claims with respect to putative class members who are parties to the Arbitration Agreements.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety for failure to state a federal claim or otherwise establish federal jurisdiction. Alternatively, Defendant requests that the Court revisit the issue of a private right of action under NYLL § 191 for a pay frequency violation (or defer such ruling pending *Grant*). Lastly, the Court should dismiss from any putative surviving class any individual employed by Defendant who is party to a valid Arbitration Agreement.

Dated: Melville, New York
July 28, 2023

Respectfully submitted,

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
58 South Service Road, Ste. *250*
Melville, New York 11747
(631) 247-0404

By:  *s/ Noel P. Tripp*
Noel P. Tripp, Esq.
Brian J. Shenker, Esq.