UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

KAILEE GALANTE,
*on behalf of herself and all other employees similarly situated*,

         Plaintiff,

   -against-

WATERMARK SERVICES IV, LLC,

         Defendant.

------------------------------------------------------------------X

Case No.: 23-CV-06227 (FPG)

## **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

JACKSON LEWIS P.C.

Noel P. Tripp, Esq.
Brian J. Shenker, Esq.
58 South Service Rd., Ste. 250
Melville, New York 11747
Tel: (631) 247-0404
noel.tripp@jacksonlewis.com
brian.shenker@jacksonlewis.com
*Attorneys for Defendant*

# TABLE OF CONTENTS

                                                                        **PAGE(S)**

LEGAL ARGUMENT ........................................................................................................... 1

   I.    PLAINTIFF'S RETALIATION CLAIMS FAIL. ............................................................1

       A.   Plaintiff's Opposition Confirms That Plaintiff's Retaliation Claim Is Not Based On An Alleged Violation Of The FLSA, and Thus Does Not Allege Retaliation Protected by the FLSA. ................................................................................................................................... 1

       B.   Plaintiff Asks The Court To Assume Without Factual Support That Defendant Knew About The Filing Of The Original Complaint, A Fact Not Pled In The Amended Complaint, And Thus Her Retaliation Claims Separately Fail On That Basis. ................ 3

   II.   PLAINTIFF HAS FAILED TO ALLEGE FACTS SUPPORTING THE CONCLUSION THAT THE AMOUNT IN CONTROVERSY HAS BEEN MET. .....................................5

   III.   TO THE EXTENT PLAINTIFF'S NYLL §191 CLAIM IS PROPERLY BEFORE THIS COURT (WHICH IT IS NOT AS SET FORTH ABOVE), A STAY PENDING THE SECOND DEPARTMENT'S DECISION IN *GRANT* IS APPROPRIATE. .......................6

   IV.   THIS COURT SHOULD REVISIT ITS REASONING IN *FREELAND* AND FIND NO PRIVATE RIGHT OF ACTION UNDER NYLL §191. .....................................................6

       A.   There is No Express Private Right of Action for Violations of NYLL §191 ................... 6

       B.   There is No Implied Private Right of Action For Pay Frequency Violations Under NYLL §191 ............................................................................................................................... 10

   V.   PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRUCK. ................................10

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*
 556 U.S. 662, 681 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .............................................. 4, 5

*Basinger v. Wal-Mart Stores, Inc.*,
 1999 U.S. Dist. Lexis 22167 (D. Me. Jan. 27, 1999) ............................................................ 2

*City of Buffalo v. Smith & Wesson Brands, Inc.*,
 No. 23-CV-66-FPG, 2023 U.S. Dist. LEXIS 100113 (W.D.N.Y. June 8, 2023) ...................... 6

*Grant v. Global Aircraft Dispatch, Inc.*,
 No. 720074/2019, 2021 N.Y. Misc. LEXIS 11125 (Sup. Ct. Qns. Cty. Apr. 20,
 2021) .................................................................................................................................. 6

*Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*,
 No. 22-CV-6415-FPG, 2023 U.S. Dist. LEXIS 118989 (W.D.N.Y. July 11,
 2023) ............................................................................................................................. 6, 10

*Gutierrez v. Bactolac Pharm., Inc.*,
 210 A.D.3d 746 (2d Dep't Nov. 9, 2022) ............................................................................ 6

*Kamm v. Cal. City Dev. Co.*,
 509 F.2d 205 (9th Cir. 1975) ............................................................................................. 10

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
 563 U.S. 1, 14 (2011) .......................................................................................................... 3

*McBeth v. Porges*,
 171 F. Supp. 3d 216 (S.D.N.Y. 2016) .................................................................................. 4

*Middleton v. Metro. Coll. of New York*,
 545 F. Supp. 2d 369 (S.D.N.Y. 2008) .............................................................................. 4, 8

*Mokrov v. Aeroflot Russian Airlines*,
 2021 U.S. Dist. LEXIS 112066 (E.D.N.Y. June 15, 2021) .................................................... 2

*Reed v. Fortive Corp.*,
 2023 U.S. Dist. LEXIS 118954 (W.D.N.Y. July 11, 2023) .................................................... 4

*Rogers v. City of Troy*,
 148 F. 3d 52 (2d Cir. 1998) ............................................................................................. 1, 2

*Suwanphanu v. Mount Sinai Health Sys.*,
 2019 U.S. Dist. LEXIS 199714 (S.D.N.Y. Nov. 15, 2019) .................................................... 4

*Ulmer v. StreetTeam Software, LLC*,
   No. 22-cv-5662(DLI)(CLP), 2023 U.S. Dist. LEXIS 33435 (E.D.N.Y. Feb.
   28, 2023) ..................................................................................................................................5

*Vega v. CM & Assoc. Constr. Mgt., LLC*,
   175 A.D.3d 1144 (1st Dep't 2019) ............................................................................... *passim*

*Valencia v. VF Outdoor, LLC*,
   2021 U.S. Dist. LEXIS 214998 (E.D. Ca. Nov. 5, 2021) ........................................................10

*Wood v. Maguire Auto., LLC*,
   508 F. App'x 65 (2d Cir. 2013) .................................................................................................5

*Zivkovic v. Laura Christy, LLC*,
   2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022) .........................................................7

**Statutes**

29 U.S.C. §§ 206, 207.....................................................................................................................1

New York Labor Law ........................................................................................................ *passim*

**Other Authorities**

Merriam Webster's Collegiate Dictionary 1364 (11th ed. 2012) ....................................................8

New Oxford American Dictionary 1884 (3rd Ed. 2010) ................................................................8

Defendant Watermark Services IV, LLC ("Watermark" or "Defendant") submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss the Amended Complaint ("Motion").

## LEGAL ARGUMENT

**I.   PLAINTIFF'S RETALIATION CLAIMS FAIL.**

  **A. Plaintiff's Opposition Confirms That Plaintiff's Retaliation Claim Is Not Based On An Alleged Violation Of The FLSA, and Thus Does Not Allege Retaliation Protected by the FLSA.**

In an effort to salvage her FLSA retaliation theory, Plaintiff argues in opposition that she engaged in protected activity under the FLSA by filing the original complaint in this action. *See* Pl. Opp at p. 7-8. First, Plaintiff argues that her original complaint – which stated just one cause of action under NYLL §191– was protected conduct under the FLSA. As support for this contention, Plaintiff asserts her original complaint "referenced the FLSA." *See* Pl. Opp. at p. 7.[1] But, Plaintiff's original complaint only alleged that Watermark's biweekly pay practice violates the NYLL – the sole reference to the FLSA had no relation to an alleged violation of that statute, but was included in a paragraph providing purported context regarding the NYLL.

Significantly, the FLSA does not prohibit biweekly pay or impose any specific frequency of pay requirements on classes of workers. The FLSA requires minimum wage, overtime, and regulates child labor. 29 U.S.C. §§ 206, 207. It does not address the myriad other wage and hour issues regulated by state law, such as meal breaks, rest breaks, vacation pay, wage statements, wage notification, or, as relevant here, frequency of pay. *See Rogers v. City of Troy*, 148 F. 3d 52, 55 (2d Cir. 1998) (noting that the FLSA requires minimum wage and overtime but that the FLSA "does not specify when this wage must be paid"). Those are issues regulated (or

---

[1] Plaintiff's original complaint alleges that "Defendant's pay practices were illegal under the NYLL," and the FLSA is referenced as support for Plaintiff's liquidated damages claim. Dkt. 2 (Compl.) ¶ 3.

not) by state law. *See e.g.*, NYLL Art. 6. The only timing requirement for the payment of wages under the FLSA that has been imposed (through case law) is that the payment frequency—whatever choice is made by the employer (*e.g.*, weekly, biweekly, semi-monthly, or monthly)—are reasonable. *Rogers*, 148 F. 3d. 57 (holding "what constitutes timely payment must be determined by objective standards").

No court in the 85-year history of FLSA has ever held that the FLSA somehow adopts state law pay frequency requirements—*i.e.*, that a violation of a state pay frequency requirement results in a violation of federal law. Indeed, the rule is the opposite—"the principle is well established that, unless Congress plainly manifests an intent to incorporate diverse state laws into a federal statute, the meaning of a federal statute should not be dependent on state law") (internal quotations omitted; emphasis in original). This, of course, is consistent with the FLSA itself, and courts have refused to read state law timing provisions into the FLSA. *Basinger v. Wal-Mart Stores, Inc.*, 1999 U.S. Dist. Lexis 22167, *8 (D. Me. Jan. 27, 1999) (observing that "No provision of the FLSA speaks to the timing of payment or the required wages" and refusing to read Maine state law pay frequency requirements into the FLSA), adopted by 1999 U.S. Dist. Lexis 22166 (D. Me. Mar. 9, 1999). The FLSA is a federal law that sets minimum national standards and expressly allows states to provide greater protection.

Even complaints more closely related to potential FLSA violations than a (totally unrelated) biweekly pay allegation – such as allegations of uncompensated time relating to meal breaks – have been deemed insufficiently related to an FLSA violation to serve as protected activity under the FLSA's anti-retaliation provision. *Mokrov v. Aeroflot Russian Airlines*, 2021 U.S. Dist. LEXIS 112066, at *12 (E.D.N.Y. June 15, 2021) (allegation that Plaintiffs were "fired . . . after complaining about not being compensated after working through meal breaks" did not

2

"demonstrate that Plaintiffs provided [Defendant] with a basis to infer that they were claiming an FLSA overtime violation"). Plaintiff's original complaint – which complained only about a NYLL requirement – did not constitute a complaint, or protected activity, under the FLSA since no reasonable employer would understand Plaintiff's NYLL §191 complaint to assert (nonexistent) rights under the FLSA.

> **B. Plaintiff Asks The Court To Assume Without Factual Support That Defendant Knew About The Filing Of The Original Complaint, A Fact Not Pled In The Amended Complaint, And Thus Her Retaliation Claims Separately Fail On That Basis.**

Even if the Plaintiff engaged in protected activity under the FLSA (she did not), the Amended Complaint lacks any *factual* allegations plausibly suggesting that the filing of the original Complaint was "known" to Defendant.[2] *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) ("It is difficult to see how an employer who does not…know an employee has made a complaint could discriminate *because* of that complaint.") (emphasis in original). Here, Plaintiff does not dispute that it is her burden to allege plausible *facts* suggesting employer knowledge. But, Plaintiff only speculates (in her opposition brief) that Watermark knew about the filing because "the Court's PACER system is a public filing" and "businesses and law firms monitor PACER dockets…to send them alerts of new filings." Pl. Opp. at p. 9. However, the Amended Complaint does not contain any *factual allegations* suggesting that this was what happened in *this* case. Nor does Plaintiff allege any factual allegations suggesting that any manager or decisionmaker involved in the decision to terminate Plaintiff's employment (or communication of same) was aware of the filing before Plaintiff's termination (to say nothing of before the performance deficiencies leading up to it). *See* Def's MOL at p. 18. That the termination was

---

[2] Again, Defendant does not contest that Plaintiff engaged in protected activity under the *NYLL*. But her NYLL retaliation claim remains futile for this reason.

3

effectuated the day after the complaint was served is immaterial – the relevant issue is whether those deciding to terminate Plaintiff had knowledge of her complaint, and there are no factual allegations that they did. Because the Amended Complaint is devoid of any factual allegations plausibly asserting that the filing of the original Complaint was known to the individuals who terminated her employment, Plaintiff's retaliation claim fails as a matter of law. *See, e.g., Reed v. Fortive Corp.*, 2023 U.S. Dist. LEXIS 118954, at *60 (W.D.N.Y. July 11, 2023); *McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

Plaintiff also asks this Court to ignore her admission that Plaintiff was terminated for legitimate, non-retaliatory, business reasons. Plaintiff argues that the reasons stated by Defendant for her termination, as she alleged in her Amended Complaint, "are not legitimate." *See* Pl. Opp. at p. 8-9. However, Plaintiff's opposition confirms her pleading in which Plaintiff admits she committed the infractions for which she was terminated. *Id.*; AC ¶ 35 (admitting that Plaintiff came in on her day off to organize her workspace, and Plaintiff did use Defendant's laundering equipment). These admissions cannot be reconciled with Plaintiff's conclusory allegation that her termination was retaliatory. *See Middleton v. Metro. Coll. of New York,* 545 F. Supp. 2d 369, 376 (S.D.N.Y. 2008) (noting that "it is not the province of the courts to function as a super-personnel department and second-guess an employer's business judgment") (citations omitted); *Suwanphanu v. Mount Sinai Health Sys.*, 2019 U.S. Dist. LEXIS 199714, at *17 (S.D.N.Y. Nov. 15, 2019) (dismissing FLSA retaliation claim, noting that plaintiff attempted "to have the Court second-guess the business decisions of the [employer]—something the Court may not do.").

4

## II. PLAINTIFF HAS FAILED TO ALLEGE FACTS SUPPORTING THE CONCLUSION THAT THE AMOUNT IN CONTROVERSY HAS BEEN MET.

Plaintiff does not dispute that it is the *Plaintiff's* burden to allege facts plausibly suggesting that the amount in controversy exceeds $75,000. *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 65 (2d Cir. 2013) (plaintiff's "allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)); *Ulmer v. StreetTeam Software, LLC*, No. 22-cv-5662(DLI)(CLP), 2023 U.S. Dist. LEXIS 33435, at *3-4 (E.D.N.Y. Feb. 28, 2023). Here, as in *Wood* and *Ulmer,* the only allegation in the pleading is a conclusory statement that "the amount in controversy exceeds $75,000." AC at ¶10. Despite this fatal deficiency, Plaintiff argues that the Amended Complaint plausibly suggests that the amount in controversy exceeds $75,000 because "Plaintiff worked for Defendant for nearly four years and received untimely wages throughout her employment and therefore is due the full amount of her wages as liquidated damages pursuant to the NYLL." Pl. Opp. at p. 11. But that assertion in no way suggests that the liquidated damages Plaintiff seeks (or any damages she seeks under the NYLL causes of action, to the extent any might lie) exceed $75,000. Stated differently, the only relevant issue is the amount of Plaintiff's allegedly untimely paid wages, something noticeably absent from Plaintiff's Complaint. Contrary to Plaintiff's contention, none of the allegations in the Amended Complaint establish this, as none establish the amount of wages she earned each week. The Court should not accept Plaintiff's sweeping legal conclusions as a substitute for properly pleaded facts.[3]

---

[3] Plaintiff does not submit any opposition to the branch of Defendant's motion requesting that this Court decline to exercise jurisdiction over Plaintiff's claim under NYLL §191. Given that Plaintiff has clearly failed to establish federal subject matter jurisdiction through diversity, and this portion of Defendant's motion is unopposed, to the extent the Court finds original jurisdiction under the FLSA (which it should not do as outlined above), this Court should nevertheless decline to exercise jurisdiction over Plaintiff's claim under NYLL §191.

**III. TO THE EXTENT PLAINTIFF'S NYLL §191 CLAIM IS PROPERLY BEFORE THIS COURT (WHICH IT IS NOT AS SET FORTH ABOVE), A STAY PENDING THE SECOND DEPARTMENT'S DECISION IN *GRANT* IS APPROPRIATE.**

Plaintiff asserts in opposition that a stay pending the Second Department's decision in *Grant v. Global Aircraft Dispatch, Inc.*, No. 720074/2019, 2021 N.Y. Misc. LEXIS 11125 (Sup. Ct. Qns. Cty. Apr. 20, 2021) is "problematic." Pl. opp. at p. 23. Apart from Plaintiff's natural self-interest, Plaintiff does not explain why a stay would be "problematic" and nothing in Plaintiff's opposition suggests that Plaintiff would be prejudiced by a stay. Ignoring the factors enumerated in this Court's decision in *City of Buffalo v. Smith & Wesson Brands, Inc.*, No. 23-CV-66-FPG, 2023 U.S. Dist. LEXIS 100113, at *8 (W.D.N.Y. June 8, 2023), Plaintiff argues that "[r]egardless of the outcome in *Grant,* this Court can continue to rely on *Vega*[.]" Pl. Opp. at p. 23. But, an Appellate Division split between *Grant* and *Vega* would constitute a different legal lens for this federal court's consideration of the NYLL §191 issue than the one used by federal courts seeking to assess how the Court of Appeals would rule solely based on *Vega*. Def's MOL at pp. 42-43. A brief stay serves judicial economy and preserves the parties' resources, rather than addressing this key legal issue multiple times *seriatim* based on the outcome of the *Grant* appeal.

**IV. THIS COURT SHOULD REVISIT ITS REASONING IN *FREELAND* AND FIND NO PRIVATE RIGHT OF ACTION UNDER NYLL §191.**

**A. There is No Express Private Right of Action for Violations of NYLL §191.**

Plaintiff's opposition fails to address the reasoning and authority cited in Defendant's moving papers that was not considered by this Court in *Freeland*, and instead asks this Court to find that NYLL §191 provides for a private right of action solely because "*Vega* is the only Appellate Division case which directly addresses the issue at bar." Pl. Opp. at p. 13. That is not true. S*ee* Def's. MOL at pp. 26-27 (discussing "wage claims" and the 2022 *Gutierrez* decision holding that NYLL §191 "pertains to frequency of pay and not unpaid wages")). Further,

this Court is not bound by *Vega* or its own analysis in *Freeland,* and can consider the substantial support for the position that the New York Court of Appeals would not adopt the *Vega* reasoning. *See Zivkovic v. Laura Christy, LLC*, 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022) (rejecting First Department decision in applying the New York Labor Law). Blindly subscribing to *Vega's* terse reasoning, as Plaintiff suggests, is the easy path to follow. But is it the right one? Respectfully, it is not.

Plaintiff does not dispute that: (1) a plain reading of NYLL §191 identifies no express private right of action; (2) NYLL §191 contains no language authorizing a private right of action for violations of the weekly payment law; and (3) NYLL §198 also contains no language that expressly references NYLL §191 or frequency of pay requirements. This is in sharp contrast to other provisions of Article 6 where NYLL §198 *does* expressly authorize private enforcement for Article 6 violations. *See, e.g.,* NYLL §§198(1-b), 198(1-d). The enumeration of specific sections of Article 6—like NYLL §§195(1) and 195(3)—for which there is a private right of action, and the absence of any reference to NYLL §191 or frequency of pay requirements, is strong textual support that a private right of action does not exist. It strains credulity that the Legislature would expressly identify the relatively small damages for violations of NYLL §195 ($50 or $100 for each workweek, up to a maximum of $5,000), but remain silent on the availability of business-ending damages for frequency of pay violations under §191, which could stretch well into the six-figures for a *single* well-compensated "manual worker" who worked the full six-year limitations period.

Rather than address the statutory text, Plaintiff simply regurgitates *Vega's* holding and cursory analysis, arguing that Plaintiff was paid "less than what is required" under the statute, and therefore she was "underpaid." Pl. Opp at p. 14. *Vega's* reasoning that NYLL §198 expressly permits a private right of action for violations of NYLL §191 (even though it is not mentioned in

7

the text) rests entirely on an incorrect interpretation of the dictionary definition of "underpay" from Merriam Webster's Collegiate Dictionary 1364 (11th ed. 2012). The dictionary defines "underpay" to mean "to pay less than what is normal or required." *Id*. According to *Vega*, "[t]he moment that an employer fails to pay wages in compliance with [NYLL §191], the employer pays less than what is required." However, that definition does not support the conclusion; it supports just the opposite: it states paying "*less* than" is an underpayment, not *later* than. Here, Plaintiff alleges wages were paid *later* than required. The term "underpayment," as both commonly used and understood, means a payment of an amount that is less than what is required by the parties' agreement, not *later* than it was due, and not under a statutory frequency of pay obligation found elsewhere in the law. *See* New Oxford American Dictionary 1884 (3rd Ed. 2010) (defining underpay to mean "pay too little to (someone)"; or "pay less than is due for (something)").[4]

And, again, the NYS DOL does not consider a pay frequency mistake under NYLL § 191 to be a "wage claim." Def's MOL at pp. 28-30. Plaintiff cites to NYS DOL opinion letters which, according to Plaintiff, support the view that "the DOL has consistently observed that NYLL §191 confers a private right of action." Pl. Opp. at p. 21. In fact, none support the claim that an error regarding the frequency in which payroll is processed is a wage claim subject to liquidated damages in a private civil suit. None even address it – at best, they confirm NYLL §191's requirements but do not address its enforcement scheme. For example, the opinion letter dated October 28, 2010, addresses whether an employer can require employees to sign their weekly timesheets. The letter simply reiterates that manual workers under NYLL §191 must be paid

---

[4] It bears repeating that the word "underpayment" currently found in NYLL §198, upon which *Vega's* holding rested, was added in 2010, and was used to describe the failure to pay wages and nothing else. It defies logic to conclude that the Legislature would have created a *new* cause of action in 2010 by adding the word "underpayment," without ever mentioning it in the 124 pages of legislative history in the Bill Jacket. *See* L. 2010, ch. 564 Bill Jacket. Based on *Vega's* logic then, a private right of action for violations of NYLL §191 was created only in 2010 when the word "underpayment" was added. But there is not a single word in the 2010 legislative history that supports the conclusion.

weekly while clerical and other workers must be paid not less than semi-monthly. But the gravamen of the letter is that an employee's signature on a timesheet does not prevent an employee from pursuing rights either with the NYS DOL or in court; it does not parse what those rights are, nor suggest at all that a violation of NYLL §191 is a wage claim. Plaintiff has no response to the IBA decisions and NYS DOL guidance cited by Defendant which are actually on point and clearly establish that frequency of pay violations are and always have been non-wage claims subject to NYS DOL penalties under NYLL §218.

None of the hypotheticals posed by Plaintiff address the issue in *this* case.[5] *See* Pl. Opp. at p. 21-22. Initially, Plaintiff is mistaken that there is no remedy under the NYLL absent a private right of action, since employees paid on an incorrect frequency are able, and have been for decades, to file complaints with the NYS DOL where penalties under NYLL §218 may be levied. Though Plaintiff's examples miss the mark, the Court should consider this one:

> Suppose a small company employing "manual workers" has 25 workers all earning $825.00 per week ($42,900 per year). Assume every employee received every dollar they were promised, including overtime at 1.5 times their hourly rate, without fail, on their scheduled payday. But assume those scheduled paydays were every two weeks, not every week, because the employer, like thousands of other employers, uses a bi-weekly payroll. And assume the employer should have processed payroll on a weekly basis instead. This employer would be exposed to liability of $3,217,500 ($825 * 26 weeks * 6 years * 25 employees = $3,217,000).

Across all 25 employees, the penalty would be a business-ending $3,217,500. For larger employers, the damages grow to astronomical amounts. An employer with 5,000 employees, for example, would owe $643,500,000, and one with 10,000 employees $1.286 billion dollars. This business-ending result is not supported by the statutory text, the legislative and statutory history, or the NYS DOL's own enforcement of NYLL §191.

---

[5] There was no 2-month delay in the processing of Plaintiff's pay (example 1); Defendant did not pay Plaintiff sporadically, yearly, or unpredictably (examples 2, 3, and 4); and Plaintiff is not claiming unpaid wages (example 5).

### B. There is No Implied Private Right of Action For Pay Frequency Violations Under NYLL §191.

Plaintiff does not address the contention in Defendant's Motion that there is no implied private right of action under NYLL §191. As noted in Defendant's motion, Defendant does not read this Court's decision in *Freeland* as endorsing an implied right of action. Indeed, this Court only stated that "*Konkur* does nothing to undermine the *Vega* court's conclusion that an *express* private right of action exists for violations of NYLL § 191(1)(a)." *Id.* at *27 (emphasis in original). In light of *Konkur*, and Plaintiff's silence on this issue, the Court should find there is no implied right of action.

### V. PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRUCK.

Under Rules 12 and 23 this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 206 (9th Cir. 1975) (affirming dismissal of class claims at the pleading stage). The proposed class cannot be maintained because it is undisputed that Defendant's arbitration agreements are valid, the NYLL §191 claim falls within the scope of claims covered by the arbitration agreements, and there are numerous putative members who agreed to resolve their disputes though arbitration and on an individual basis. Def's MOL at pp. 43-45; *Valencia v. VF Outdoor, LLC*, 2021 U.S. Dist. LEXIS 214998, at *13 (E.D. Ca. Nov. 5, 2021) (collecting authority rejecting certification as to putative class members bound to arbitration at the motion stage). Accordingly, Defendant's motion to strike the class allegations should be granted.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Defendant's original Motion papers, Defendant respectfully requests that the Court grant Defendant's Motion in its entirety and any other relief the Court deems just and proper.

Dated: Melville, New York
September 1, 2023

Respectfully submitted,

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
58 South Service Road, Ste. *250*
Melville, New York 11747
(631) 247-0404

By: *Noel P. Tripp*
Noel P. Tripp, Esq.
Brian J. Shenker, Esq.

**CERTIFICATE OF SERVICE**

        I hereby certify that on this 1st day of September, 2023, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Western District's Local Rules, and/or the Western District's Rules on Electronic Service upon the following parties and participants:

Justin M. Cordello, Esq.
CORDELLO LAW PLLC
*Attorney for Plaintiffs*
200 Anderson Avenue
Rochester, NY 14607

*Noel P. Tripp*
Noel P. Tripp

4855-6694-2077, v. 1