UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KAILEE GALANTE,
*on behalf of herself and all other*
*employees similarly situated*,

                        Plaintiff,           Case # 23-CV-6227-FPG

v.                                    DECISION AND ORDER

WATERMARK SERVICES IV, LLC,

                        Defendant.

## INTRODUCTION

Plaintiff Kailee Galante brings this putative class action against her former employer, Defendant Watermark Services IV, LLC. ECF No. 12. She alleges that Defendant violated Section 191 of the New York Labor Law ("NYLL") by failing to pay her and other manual workers on a weekly basis and that Defendant terminated her in retaliation for bringing this action, in violation of both the NYLL and the Fair Labor Standards Act ("FLSA"). *See id.* Defendant has moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), 12(f), and 23. *See* ECF No. 15. For the reasons that follow, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant owns and operates senior living communities throughout the United States, including twelve in New York. ECF No. 12 ¶¶ 22, 25.[1] Plaintiff worked as a housekeeper and maintenance person at one of those facilities, Legacy Park Crescent, in Greece, New York from

---

[1] Unless otherwise noted, the facts are drawn from the amended complaint and the documents attached to it, ECF No. 12.

July 17, 2019 until May 10, 2023.  *Id.* ¶¶ 15–16.  In that position, she performed repairs in residents' units, operated floor and carpet cleaning machines, moved furniture, received and stored deliveries, pushed residents in wheelchairs, dusted, vacuumed, mopped, plunged toilets, and changed lightbulbs.  *Id.* ¶ 28.  Throughout Plaintiff's employment, Defendant paid her on a biweekly basis.  *See id.* ¶¶ 28, 30; ECF No. 12 at 14–15.

About two weeks after Plaintiff filed her initial complaint, Defendant terminated her employment.  ECF No. 12 ¶ 34.  The disciplinary report completed in support of Plaintiff's termination charged her with three "serious offenses" warranting immediate termination.  *Id.*  Ex. B at 17.  These included "[w]orking off the clock and on a day when not authorized to work" on April 29, 2023, "[m]isuse of Watermark property" on May 1, 2023, and "[s]leeping during work hours" on May 5, 2023.  *Id.*  Plaintiff contests all three offenses.  *Id.* ¶ 35.  According to Plaintiff, rather than sleeping during work hours, she "was changing an electrical outlet" in one of Defendant's apartment units, which "required her to lie down on the floor for a short period of time."  *Id.*  As to the allegation of misusing Defendant's property, Plaintiff states that "laundering [] her work smocks" with Defendant's equipment was a "common practice" among Defendant's employees.  *Id.*  Finally, Plaintiff acknowledges "that she did come in on her day off to organize her workspace," but only did so because "her department was understaffed and she was swamped with work orders."  *Id.*  Otherwise, she was "an exemplary employee," and "was promoted to become one of the first female employees to ever hold the position of maintenance person."  *Id.* ¶ 32.

Since Defendant terminated her employment, Plaintiff has "been unable to find regular work with benefits and is struggling to keep her home and meet her basic needs."  *Id.* ¶ 36.

## LEGAL STANDARDS

### I.      Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "Congress has granted district courts original jurisdiction over . . . certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013).  "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted).

Courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.*  To overcome that presumption, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable falls short of the jurisdictional threshold.  *Id.* That is, "the defendant must show that the complaint 'was so patently deficient as to reflect to a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'" *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).  Accordingly, even where the allegations leave "grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Feitosa v. Keem*, No. 22-CV-377, 2023 WL 2267055, at *3 (W.D.N.Y. Feb. 28, 2023) (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)).

## II.      Rule 12(b)(6)

To succeed on a motion to dismiss under Rule 12(b)(6), the defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim is plausible when the plaintiff pleads sufficient facts that allow a court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement." *Id.* Instead, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

When deciding a motion under Rule 12(b)(6), a court ordinarily may not rely on matters outside the pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). For the purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel.*

*& Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see also* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

## DISCUSSION

Defendant asserts three grounds for dismissal: (1) Plaintiff has failed to adequately plead, and cannot otherwise meet, the amount in controversy requirement; (2) Plaintiff has failed to state a claim of retaliation under either the FLSA or NYLL; and (3) NYLL § 191 does not provide a private right of action.  *See* ECF No. 15-1 at 15–41; *see also* ECF No. 25.  With respect to Plaintiff's class allegations, Defendant argues that the Court should dismiss those claims to the extent that the putative class includes individuals party to arbitration agreements with Defendant. *Id.* at 43-45.

## I.  **Amount in Controversy**

The Court first considers whether Plaintiff has plausibly pled that the amount in controversy exceeds $75,000.  Defendant argues that she has not, because the "Amended Complaint lacks any facts plausibly suggesting that the amount in controversy is met," other than a "boilerplate assertion stating that 'the amount in controversy exceeds $75,000.'"  ECF No. 15-1 at 19 (citing ECF No. 12 ¶ 10).  The Court disagrees.

At this stage of the proceedings, Plaintiff must demonstrate only that "it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount."  *Scherer*, 347 F.3d at 397 (internal quotation marks omitted).  And, unless Defendant can show "to a legal certainty" that the amount recoverable falls short of the jurisdictional threshold, the Court presumes "that the face of the complaint is a good faith representation of the actual amount in controversy."  *Id.*

While the Amended Complaint could be more clear, the Court concludes that Plaintiff has met her burden of showing to a reasonable probability that her claim exceeds $75,000. She alleges that she was an employee of Defendant for nearly four years, from July 2019 to May 2023. ECF No. 12 ¶ 15. She further alleges that "Defendant has failed to provide timely wages to Plaintiff and all other [manual workers]." *Id.* ¶ 5. She includes as an example, her paystub for the period beginning March 26, 2023 and ending April 8, 2023, which demonstrates that Defendant paid her on April 14, 2023. *See* ECF No. 12, Ex. A at 15. She then states that this shows that "Defendant failed to pay . . . her wages earned from March 26, 2023 through April 1, 2023 by April 8, 2023 as required by NYLL § 191(1)(a)." ECF No. 12 ¶ 31. With respect to her NYLL § 215 retaliation claim, Plaintiff alleges that she is entitled to recover, among other things, lost wages, liquidated damages, and "other damages." *Id.* ¶ 65. She alleges that, since her termination, she has "been unable to find regular work with benefits and is struggling to keep her home and meet her basic needs." *Id.* ¶ 36.

In light of the remedies that Plaintiff alleges are available for a violation of NYLL § 191(1)(a) under NYLL § 198(1-a)—including liquidated damages equal to "one hundred percent of the total amount of wages found to be due"—and the wages Plaintiff earned as Defendant's employee, it appears to "a reasonable probability" that her claim exceeds $75,000. *See Scherer*, 347 F.3d at 397. This is particularly true when those damages are aggregated with the damages available in retaliation claims under NYLL § 215. *See* NYLL § 215(2)(a) (authorizing courts to order "all appropriate relief," including, among other things, liquidated damages of up to $20,000 and lost compensation).

Accordingly, Defendant has not demonstrated "to a legal certainty" that the amount recoverable does not exceed the jurisdictional threshold of $75,000. *See Feitosa*, 2023 WL

2267055, at *3.  The Court therefore concludes that Plaintiff has sufficiently alleged that the amount in controversy is enough to give this Court jurisdiction under 28 U.S.C. § 1332(a).

## II. Retaliation Under the FLSA and NYLL

Plaintiff alleges that Defendant terminated her in retaliation for filing her initial complaint, in violation of both the FLSA and NYLL.  *See* ECF No. 12 ¶¶ 32–38.  Defendant argues that Plaintiff has failed to plausibly plead retaliation because (1) she has failed to plausibly allege that she participated in protected activity for the purposes of the FLSA and (2) she has failed to plausibly allege a causal connection between her protected activity and her discharge for the purposes of either the FLSA or the NYLL.  As explained below, the Court agrees with Defendant that Plaintiff fails to state claim under the FLSA but disagrees that she fails to state a claim under the NYLL.

Both the FLSA and NYLL prohibit employers from discharging employees because they have engaged in certain protected activities.  *See* 29 U.S.C. § 215(a)(3); NYLL § 215(1).  Under the FLSA it is unlawful for "any person . . .  to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]."  29 U.S.C. § 215(a)(3).  Similarly, the NYLL makes it "unlawful for an employer to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has caused to be instituted or is about to institute a proceeding under or related to [the NYLL]."  NYLL § 215(a)(1)

Courts analyze FLSA retaliation claims under the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  Under that framework, a plaintiff asserting a claim of retaliation under the FLSA "must first establish a prima facie case of retaliation by showing (1)

7

participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Id.* This burden-shifting standard also applies to retaliation claims under the NYLL. *Rosenbaum v. Meir*, No. 20-CV-4520, 2023 WL 2305960, at *6 (E.D.N.Y. Mar. 1, 2023).

At the pleading stage, "the Court does not specifically apply the *McDonnell-Douglas* burden-shifting test to determine whether [a plaintiff] has stated a retaliation claim." *Brundidge v. Xerox Corp.*, No. 12-CV-6157-FPG, 2014 WL 1323020, at *3 (W.D.N.Y. Mar. 31, 2014). Instead, courts "generally assess[] the plausibility of [the plaintiff's] claim based on the facts alleged in the [complaint]." *Id.* Because the pleading requirements for retaliation claims under both the FLSA and NYLL "significantly overlap," on a motion to dismiss, courts apply the same standards to retaliation claims under the NYLL. *Id.*

### a. Protected Activity Under the FLSA

Defendant argues that because the original complaint "does not mention the FLSA" and included a single state-law claim which does not implicate the FLSA—Plaintiff's frequency of pay claim under NYLL § 191—the original complaint cannot constitute protected activity for the purposes of the FLSA. ECF No. 15 at 15-16. Plaintiff argues that she engaged in protected activity even if she did not specifically allege a violation of the FLSA because she filed a complaint alleging that Defendant's pay practices were illegal under the NYLL and referred to the FLSA in that complaint. ECF No. 17 at 7. As explained below, the Court agrees with Defendant.

The "filing of a FLSA lawsuit" constitutes participation in protected activity for the purposes of the FLSA's anti-retaliation provision. *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *see also Salazar v. Browne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384

(E.D.N.Y. 2011) (filing of initial complaint alleging NYLL and FLSA violations constituted protected activity under both NYLL and FLSA).

Here, however, Plaintiff's original complaint asserted only one cause of action: an alleged violation of NYLL § 191(1)(a).  ECF No. 2 ¶¶ 37–42.  Plaintiff did make passing reference to the FLSA in her original complaint.  *See* ECF No. 2 ¶ 3 (describing when liquidated damages are available under the FLSA, "on which the NYLL is based"), ¶ 20 (alleging that Plaintiff was an "employee" as defined under both the NYLL and FLSA), ¶ 21 (alleging that Defendant was an "employer" as defined under both the NYLL and FLSA).  But because the FLSA, unlike the NYLL, does not convey the right to weekly—rather than biweekly—pay, *see Belizaire*, 61 F. Supp. 3d at 353, she did not assert rights protected by it.  *Aflalo v. Cantor Fitzgerald, L.P.*, 298 F. Supp. 3d 688, 695–98 (S.D.N.Y. 2018).  Accordingly, when Plaintiff filed her initial complaint, she did not file "any complaint or institute[] or cause[] to be instituted any proceeding under or related to [the FLSA]," 29 U.S.C. § 215(a)(3).  Filing the initial complaint therefore did not constitute protected activity for the purposes of the FLSA.

Because Plaintiff has failed to plausibly allege that she participated in protected activity for the purposes of the FLSA, her retaliation claim under the FLSA must be dismissed.

### b.  Causal Connection Under the NYLL

With respect to Plaintiff's NYLL retaliation claim, Defendant argues that, while it does not dispute that Plaintiff engaged in protected activity for the purposes of the NYLL, her NYLL retaliation claim fails for lack of a causal connection.  *Id.*  Plaintiff, for her part, contends that the disciplinary report she has attached to her Amended Complaint demonstrates the causal connection, "given that [the discharge] occurred the day after service was effectuated."  ECF No. 17 at 8.  The Court agrees with Plaintiff.

"Although the application of pre-existing disciplinary policies to a plaintiff 'without more,' does not constitute adverse employment action," a plaintiff may demonstrate a causal connection between adverse employment action and protected activity by, among other things, "[s]howing that the protected activity was closely followed in time by the adverse action." *Mullins*, 626 F.3d at 53 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). But, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see also White v. Eastman Kodak*, No. 06-CV-6493, 2009 WL 1514659, at *10 (W.D.N.Y. May 29, 2009) ("[W]here . . . discipline was already underway prior to the protected activity . . ., the Second Circuit has held that temporal proximity alone is insufficient to make out a prima facie case."), *aff'd*, 368 F. App'x 200 (2d Cir. 2010) (summary order). At the pleading stage, a plaintiff "is not required to provide evidence" of a causal connection between her protected activity and the adverse action, but must "plead facts that indicate an ability to do so." *McManamon v. Shinseki*, No. 11 Civ. 7610, 2013 WL 3466863, at *12 (S.D.N.Y. July 10, 2013).

Defendant argues that Plaintiff has failed to plausibly allege a causal connection because the disciplinary record attached to the Amended Complaint demonstrates that the "disciplinary process pre-dated Defendant's notice of the instant lawsuit. ECF No. 15-1 at 17. According to Defendant, because Plaintiff did not "effectuate service until [May 10, 2023]," and she was terminated on that day, "Defendant was not on notice of the original Complaint during the disciplinary process culminating in [Plaintiff's] termination," and her claim that she was terminated because she filed the initial complaint must therefore fail as a matter of law. *Id.*

Contrary to Defendant's assertion, Plaintiff alleges that she was terminated on May 11, 2023, the day after Defendant was served.  ECF No. 12 ¶ 34; *see also id.*, Ex. B. at 17–18. Defendant's argument that the disciplinary process began in April 2023 and was therefore underway prior to the protected activity misses the mark.  Although the conduct underlying the disciplinary report occurred in April and early May, the disciplinary report itself indicates that it was "reviewed" on May 10, 2023 and presented on May 11, 2023.  ECF No. 12, Ex. B at 17–18. Moreover, there is no indication that Plaintiff had been subject to disciplinary proceedings related to the offenses for which she was terminated prior to May 10, 2023.  *See id.*  Accordingly, it is plausible that Defendant instituted the disciplinary proceedings that resulted in Plaintiff's termination after learning that she had engaged in protected activity by filing the initial complaint. *See Mullins*, 626 F.3d at 53; *cf. Slattery*, 248 F.3d at 95.

Defendant's reliance on *Reed v. Fortive Corp.*, No. 21-CV-6312, 2023 WL 4457908 (W.D.N.Y. July 11, 2023) is misplaced.  In *Reed*, the court concluded that the plaintiff failed to allege a sufficient causal nexus based on temporal proximity because "several of the alleged retaliatory acts . . . [were] mere continuations of the same alleged pattern of retaliation" that plaintiff claimed "began eighteen months *before* she filed her discrimination complaint."  *Reed*, 2023 WL 4457908, at *21.  Here, however, while Plaintiff committed the workplace offenses for which Defendant terminated her employment before Defendant was served on May 10, 2023, her allegations, unlike those in *Reed*, do not indicate that Defendant instituted the disciplinary proceeding before that date.  They instead plausibly suggest that Defendant decided to terminate Plaintiff on the day that it became aware of her protected activity.  At this stage of the proceedings, that is enough.  *See Mullins*, 626 F.3d at 53; *cf. Slattery,* 248 F.3d at 95.

### III. Pay Frequency Under the NYLL

Defendant argues that the Plaintiff's pay frequency claim must be dismissed because there is no express or implied private right of action for a violation of NYLL § 191(1)(a).  *See* ECF No. 15-1 at 21.  On January 17, 2024, while Defendant's motion was pending, the Appellate Division, Second Department issued a decision in *Grant v. Global Aircraft Dispatch, Inc.*, in which it concluded that no private right of action, whether express or implied, exists to enforce NYLL § 191(1)(a).  *Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 714–20 (2d Dep't 2024).  In doing so, the Second Department rejected the First Department's conclusion in *Vega v. CM & Associates Construction Management*, 175 A.D.3d 1144 (1st Dep't 2019) that there is such a right of action.  *See Vega*, 175 A.D.3d at 715–17.  The Court subsequently invited, and the parties provided, supplemental briefing on the *Grant* decision.  ECF Nos. 23–25.  As explained below, the Court now concludes that *Grant* better represents how the New York Court of Appeals would decide the issue.

When applying New York law in the absence of a decision by the New York Court of Appeals, the Court is "generally obliged to follow the state law decisions of intermediate appellate courts . . . in the absence of any contrary New York authority or other persuasive data" establishing that the Court of Appeals would decide otherwise.  *Freeland v. Findlay's Tall Timbers Distrib. Ctr.*, No. 22-CV-6415, 2023 WL 4457911, at *8 (W.D.N.Y. July 11, 2023); *see also Pahuta v. Massey-Ferguson*, 170 F.3d 125, 134 (2d Cir. 1999).  Accordingly, prior to the Second Department's decision in *Grant*, this Court followed what was at the time the only Appellate Division decision addressing this issue, *Vega*, and permitted an untimely pay claim under NYLL § 191(1)(a) to proceed.  *See Freeland*, 2023 WL 4457911, at *8.  Because contrary authority now exists, the Court must determine which decision, *Grant* or *Vega*, better reflects how the New York

Court of Appeals would decide the issue. *See DiBella v. Hopkins*, 403 F.3d 102, 111–12 (2d Cir. 2005); *see also Michalski v. Home Depot*, 225 F.3d 113, 116–17 (2d Cir. 2000) (stating that a federal court must predict how the New York Court of Appeals would rule in the face of a split in the Departments of the Appellate Division). In this Court's view, that decision is *Grant*.

### a. The First Department's Decision in *Vega*

As this Court explained in *Freeland*, the plaintiff in *Vega* sought to recover liquidated damages, interest, and reasonable attorney's fees pursuant to NYLL§ 198(1-a) on the grounds that her former employer did not pay her on a weekly basis, in violation of NYLL § 191(1)(a). *Freeland*, 2023 WL 4457911, at *8 (citing *Vega*, 175 A.D.3d at 1144–45). The First Department held first that the term "underpayment" as used in § 198(1-a) "encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action." *Vega*, 175 A.D.3d at 1145. The First Department found support for its conclusion in the dictionary definition of "underpay," which includes to "pay less than what is normal or required." *Id.* Under that definition, the First Department concluded that the moment an employer fails to pay manual workers within the time set out in NYLL § 191(1)(a), "the employer pays less than what is required." *Id.* In doing so, it rejected the "defendant's implicit attempt to read into section 198(1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the commencement of an action." *Id.* While an employer may "assert an affirmative defense of payment if there are no wages for the 'employee to recover,'" that payment "does not eviscerate the employee's statutory remedies." *Id.*

The *Vega* court also held that, even if there was no express private right of action, there was an implied private right of action because the plaintiff, as a former manual worker, was "one of the class for whose particular benefit the statute was enacted, the recognition of a private right

of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* at 1146.

### b. The Second Department's Decision in *Grant*

In *Grant*, a majority of the Second Department rejected the First Department's conclusion that a private right of action—either express or implied—exists for violations of NYLL § 191(1)(a). *Grant*, 223 A.D.3d at 714, 719–20. [2]

In rejecting an express private right of action, the court pointed to the statutes' plain language, the New York Court of Appeals' decision in *Konkur v. Utica Academy of Science Charter School*, 38 N.Y.3d 38 (2022), and the legislative history of the NYLL. The court rejected the *Vega* court's interpretation of the term "underpayment," concluding that that term, along with the earlier reference to an employee being "paid less than the wage to which he or she is entitled," encompassed situations in which an employee has received a "lesser amount of earnings than agreed upon," not those in which an employee "received the agreed-upon amount one week later, on the regular payday." *Grant*, 223 A.D.3d at 715. In further support of this conclusion, the court noted that the remedy plaintiff sought—liquidated damages—were available as "an additional amount," suggesting that the "recovery of an underpayment [is] the primary, foundational remedy" on which recovery of liquidated damages depends. *Id.* at 715–16. Finally, the court determined that, while a biweekly pay schedule may violate § 191(1)(a), it was not the same as an actionable nonpayment or underpayment. *Id.* (citing NYLL § 191(2)).

The court then turned to the New York Court of Appeals' decision in *Konkur*. Although the court acknowledged that *Konkur* did not abrogate *Vega*'s conclusion as to an express private right of action, it nevertheless found its analysis of the NYLL's anti-kickback statute, NYLL §

---

[2] Because the Second Department has issued its decision in *Grant*, the Court Defendant's motion for a stay as moot. *See Gamboa v. Regeneron Pharms., Inc.*, No. 22-CV-10605, 2024 WL 815253, at *3 n.2 (S.D.N.Y. Feb. 27, 2024).

198-b, relevant.   Specifically, it noted that the Court of Appeals declined to conclude that a violation of that statute constituted a wage claim within the meaning of § 198(1-a), even though it had the effect of reducing the employee's wage.   *Grant*, 223 A.D.3d at 717.   In the Second Department's view, this analysis raised doubts about the First Department's interpretation of the terms wage claim and underpayment.   *Id.*; *id.* at 717 n.*.

As for the legislative history of § 198(1-a), it revealed "no reference" to the frequency or timing of payments.   *Id.* at 718–19.   Instead, it demonstrated that § 198(1-a) was aimed at "remedying employers' failure to pay the amount of wages required by contract or law," including those cases in which an employer paid less than the minimum wage.   *Id.* (citing Assemb. Mem. in Support, Bill Jacket, 2009 N.Y. Laws, ch. 372, at 6).   The court therefore concluded that NYLL § 198(1-a) was not meant to remedy an employers' failure to pay wages on a particular schedule. *Id.*

The court then proceeded to reject an implied private right of action.   The court relied on the Court of Appeals' analysis of § 198-b in *Konkur*, in which it concluded that a private right of action would be inconsistent with the statutory scheme in light of the "significant enforcement mechanisms provided for in the statute." *Id.* at 719–20 (citing *Konkur*, 38 N.Y.3d at 42–43). Because the NYLL also provides "multiple official enforcement mechanisms" for violations of § 191, the court concluded that, under *Konkur*, no private right of action could be implied. *Id.* at 720.

One justice dissented.   The dissenting justice concluded that § 198(1-a) provides either an express or implied private right of action for violations of §191.   *Grant*, 223 A.D.3d at 720 (Christopher, J. concurring in part and dissenting in part).   He largely agreed with the First Department's reasoning in *Vega*, writing that "the late payment of wages is tantamount to a

nonpayment or underpayment of wages, which permits recovery under [§ 198(1-a)]." *Id.* at 721. He also rejected the majority's reliance on *Konkur*, noting that while "the reasoning of *Konkur* does echo issues raised" in *Grant*, it involved "a different and unrelated statute." *Id.* at 722 (citing *Espinal v. Sephora USA, Inc.*, No. 22 Civ. 3034, 2022 WL 16973328, at \*9 (S.D.N.Y. Nov. 16, 2022)). And, because *Konkur* did not, on its face, stand for the proposition that either late payments are not under payments or late payment claims are not wage claims, it did not "directly contradict" the First Department's holding in *Vega*. Moreover, *Konkur* did not, in the dissenting justice's view, abrogate the First Department's conclusion that a private right of action could be implied. *Id.* at 724.

### c.  Existence of a Private Right of Action for Violations of NYLL § 191(1)(a)

Although this Court previously held that NYLL § 198(1-a) provides an express private right of action for violations of § 191(1)(a), *see Freeland*, 2023 WL 4457911, at \*12, the Court now concludes, in light of the Second Department's decision in *Grant*, that it does not provide a private right of action, either express or implied. Accordingly, Plaintiff's § 191 claim must be dismissed.

### i.  Express Private Right of Action

When the New York Court of Appeals interprets a statute, it begins with the statutory text, "giving effect to the plain meaning thereof." *Peyton v. N.Y.C. Bd. of Standards & Appeals*, 36 N.Y.3d 271, 279 (2020). The court generally construes "words of ordinary import with their usual and commonly understood meaning, unless the Legislature by definition or from the rest of the context of the statute provides a special meaning." *Id.* at 279–80 (internal citations omitted). "[I]n appropriate circumstances," the court inquires into the purpose of the legislation, examining the statutory context of the provision at issue as well as its legislative history. *Id.* at 280. Applying

these principles, while the Court previously found the First Department's decision in *Vega* persuasive in the absence of contrary authority, *see Freeland*, 2023 WL 4457911, at *12, the Court now concludes that the Second Department's rejection of an express private right of action better reflects how the New York Court of Appeals would decide the issue.

Section 198(1-a) permits an employee to bring a "wage claim," by which she may recover, in addition to "the full amount of any underpayment," liquidated damages "equal to one hundred percent of the total amount of wages found to be due." In *Vega*, the First Department concluded that this provided a cause of action for violations of § 191's pay frequency requirements because, "[t]he moment that an employer fails to pay wages in compliance with [§ 191(1)(a)], the employer pays less than what is required." 175 A.D.3d at 1145. That is, according to the First Department, an employer who failed to pay an employee any wages on the date required under § 191(1)(a) also underpaid the employee.

While that is one conceivable reading of the statute, *see Freeland*, 2023 WL 4457911, at *8, 12, the Court finds the Second Department's contrary reading more persuasive. The "usual and commonly understood meaning[s]," *Peyton v. N.Y.C. Bd. of Standards & Appeals*, 36 N.Y.3d 271, 279 (2020), of "less than" and "underpayment" refer to situations in which an employee has not received the amount of wages she is entitled to, rather than situations in which she has received them one week late. Section 198(1-a) is better understood, then, as providing a remedy for violations of statutes governing *how much* an employer must pay and employee, not *how frequently* the employer must do so.

The statutory purpose and legislative history also support this reading. "Subdivision 1 of section 198 . . . was added in 1937," as part of the Model Wage Bill, "along with provisions allowing employees to assign wage claims to the Commissioner [of Labor]." *Grant* 233 A.D.3d

at 718.  Later, in 1967, the Legislature added subdivision 1-a, which required employers to pay "an additional amount of liquidated damages if the employer's failure to pay the wage was willful." *Id.* (citing 1967 N.Y. Laws, ch. 310).  In so amending § 198, the Legislature recognized that limiting recovery to "the amount of [the] underpayment, without liquidated damages" encouraged employers to violate the statute in that if the employer was caught, its only obligation would be to pay back wages without interest.  *See id.*  (citing Bill Jacket, 1967 N.Y. Laws, ch. 310 at 4).  In more recent amendments, the Legislature likewise targeted employers who had, for example "failed for years to pay even the well-publicized minimum wage rate" or "less than [the] agreed-upon wage."  *Id.* at 719 (citing Bill Jacket, 2009 N.Y. Laws, ch. 372 at 5; Bill Jacket, Letter from N.Y. Dep't of Labor, Bill Jacket, 2010 N.Y. Laws, ch. 564, at 9).

The thread running throughout the legislative history, then, is that liquidated damages are available when an employee has received either none of or less than the wages to which she is entitled.  Even recent amendments to § 198(1-a) addressing wage claims that go beyond refusals to pay either the minimum wage or the agreed-upon rate support this view.  In 2015, for example, the Legislature clarified that an employee may recover liquidated damages under § 198(1-a) for violations of § 194, which prohibits wage discrimination due to an employee's status in a protected class.  *See Konkur*, 38 N.Y.3d at 44; *see also* NYLL § 198(1-a) ("such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.").  Violations of § 194, like refusals to pay the agreed-upon wage, fit comfortably within the common usage of the word "underpayment."  When a woman receives a lower rate of pay than a man for the same work, she receives "less than what is required."  *See Vega*, 175 A.D.3d at 1145 (citing Merriam-Webster's Collegiate Dictionary (11th ed. 2012)).

The First Department's reading of the statute admittedly retains some appeal.  Consider a manual worker who earns $750 per week.  Under NYLL § 191(1)(a), her wages "shall be paid weekly and not later than seven calendar days after the end of the week" in which she earned that $750.  If by the end of the seventh day, her employer has not paid those wages, it has, in some sense, "paid less than what is required": it has paid her $0 when it should have paid her $750.  But as long as the employer pays the employee in full one week later, the violation is ultimately one of timing, not amount.  The First Department's interpretation would therefore require the Court to read terms "less than" and "underpayment" to refer to timing, when their common usage refers to amount.  *See Vega*, 175 A.D.3d at 1145 ("[U]nderpay is defined as 'to pay less than what is normal or required.'").  Accordingly, as the Second Department reasoned, an employee who has received her full wages on the regular biweekly pay day has not received "less than the wage" to which she is entitled.  There has not, therefore, been an underpayment for the purposes of § 198(1-a).  *See Grant*, 223 A.D.3d at 715.

Plaintiff raises one final point that gives the Court some pause.  The Court of Appeals has repeatedly stated that the attorney's fees remedy in § 198(1-a) "must relate to 'wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6.  And it is [§ 191] that 'generally regulates the payment of wages by employers and creates reciprocal rights of employees.'" *Konkur*, 38 N.Y.3d at 43–44 (quoting *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 459 (1993)).  On its face, this suggests that the § 198(1-a) creates an express right of action for violations of § 191.  After the Court of Appeals decided *Konkur*, however, the legislature enacted the "No Wage Theft Loophole Act," which amended NYLL §§ 193 and 198, adding identical language to both: "There is no exception to liability under this section for the unauthorized failure to pay wages, benefits, or wage supplements." 2021 N.Y. Sess. Laws, ch. 397,

§§ 3, 4.  In doing so, the legislature "clarif[ied] that . . . the unauthorized failure to pay wages, benefits, and wage supplements has always been encompassed by the prohibitions of section 193." *Id.* § 1.  To the extent that the Court of Appeals previously viewed § 191 as the source of an employee's right to full wages, the legislature has made it clear that § 193, not § 191, establishes the employer's obligation to pay "full wages, benefits, and wage supplements."  *Id.*; *see also Mendoza v. Cornell Univ.*, 215 A.D.3d 590, 591 (1st Dep't 2023) (recognizing that an amendment to § 198 abrogated *Gottlieb*).  Contrary to Plaintiff's contention, then, this statement does not compel the conclusion that § 198(1-a) provides a private right of action for violations of § 191.

    In light of the text, purpose, and history of the statute, the Court concludes that the Second Department's decision in *Grant* better reflects how the New York Court of Appeals would decide this issue.  The Court therefore finds that § 198(1-a) does not provide an express private right of action for violations of § 191(1)(a).

### ii.    Implied Private Right of Action

    Where a statute contains no express private right of action, a plaintiff can seek relief for a violation of the statute "only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history."  *Konkur*, 38 N.Y.3d at 40–41.  The New York Court of Appeals applies a "three-factor test to determine whether the legislative intent favors an implied right: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* at 41 (internal quotation marks omitted).  All three factors must be present before the court will recognize an implied private right of action.  *Id.*

The Court agrees with the First Department's conclusion that the first two factors are present.  Plaintiff has alleged that she is a "manual worker" as defined by the statute, and permitting her to bring this action would "promote the legislative purpose of § 191, which is to protect workers who are generally 'dependent upon their wages for sustenance.'"  *Vega*, 175 A.D.3d at 1146 (quoting *People v. Vetry*, 309 N.Y. 401, 405 (1955)); *see also Grant*, 223 A.D.3d at 719–20 (analyzing only whether an implied right would be consistent with the legislative scheme).  However, in light of the NYLL's existing enforcement mechanism, the Court departs from the First Department's conclusion that an implied private right of action would be consistent with the legislative scheme.

Consistency with the legislative scheme is "the most important [factor] and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others," because that choice "demonstrates that the legislature considered and decided what avenues of relief were appropriate."  *Konkur*, 38 N.Y.3d at 41.  Accordingly, in *Konkur*, the court declined to find an implied right of action for violations of NYLL § 198-b where the statutory scheme expressly provided two robust enforcement mechanisms: criminal enforcement under § 198-b itself and civil penalties under § 218.  *See id.* at 42–43.  While, unlike violations of § 198-b, violations of § 191 are not subject to criminal enforcement, they are subject to civil enforcement under § 218.  *See* NYLL § 218(1).  Section 218(1) authorizes the Commissioner of Labor to both order compliance with the relevant provision and impose civil penalties from up to $1,000 for a first violation to up to $3,000 for a third or subsequent violation.  NYLL § 218(1).  This "robust enforcement mechanism" indicates that the legislature has considered "how best to effectuate its intent and provided the avenues for relief it deemed warranted."  *Konkur*, 38 N.Y.3d at 43.

In *Konkur*, the Court of Appeals also rejected the plaintiff's argument that the court could infer an implied right from § 198(1-a).  The court observed that "[w]here the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action."  *Konkur*, 38 N.Y.3d at 44 (citing *Kloppel v. HomeDeliveryLink, Inc.*, No. 17-CV-6296, 2019 WL 6111523, at *3 (W.D.N.Y. Nov. 18, 2019)).  In support of this observation, the court pointed to recent amendments increasing the damages available for willful violations of § 194 and adding a private right of action for the notice requirements set out in § 195  *See id.*; *see also* NYLL § 198(1-a) (enhanced damages for willful violations of § 194); NYLL § 198(1-b), (1-d) (damages available in civil action for violations of § 195).  That the legislature chose not to provide a similar remedy for violations of § 198-b was "further evidence that it believed that [the statute's] existing remedies would be adequate."  *Konkur*, 38 N.Y.3d at 44 (alteration in original).  The same is true here.  The legislature has, in § 218, provided a robust enforcement scheme for violations of § 191.  It has not, on the other hand, identified § 191 as one of the provisions of article 6 for which § 198 provides a remedy.  *Konkur*, 38 N.Y.3d at 44–45.[3]

Accordingly, in light of the robust enforcement mechanism set out in § 218, the Court concludes that the New York Court of Appeals would decline to find an implied private right of action for violations of § 191.

### d.  Conclusion

In light of the Second Department's well-reasoned decision in *Grant*, the Court concludes that the New York Court of Appeals is unlikely to determine that either an express or implied

---

[3] The Court's conclusion that NYLL § 198(1-a) does not provide an express private right of action for violations of § 191 forecloses the possibility that a right of action may be implied from the references in § 198(1-a) to wage claims and underpayments.  *Cf. Konkur*, 38 N.Y.3d at 43–44 (rejecting argument that violation of § 198-b was a wage claim for purposes of § 198(1-a)).

private right of action exists for violations of NYLL § 191. *See Michalski*, 225 F.3d at 116–17 (federal court sitting in diversity must predict how the New York Court of Appeals would rule). The Court therefore dismisses Plaintiff's pay frequency claim under § 191.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss, ECF No. 15, is GRANTED in part and DENIED in part. Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED. Plaintiff's NYLL pay frequency claim and FLSA retaliation claim (Counts I and III) are DISMISSED. Plaintiff's NYLL retaliation claim (Count II) may proceed. Defendant's request to dismiss Plaintiff's class claims with respect to putative class members who are parties to arbitration agreements is DENIED as moot in light of the Court's dismissal of Plaintiff's pay frequency claim. Defendant's request for a stay is also DENIED as moot.

IT IS SO ORDERED.

Dated: March 7, 2024
   Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York